FILED
United States Court of Appeals
Tenth Circuit

July 23, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HUMPHREY SARWONO
WITJAKSONO and LIGIOWATI
FNU,

          Petitioners,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

          Respondent.

No. 08-9540

---

**ORDER**

---

Before **LUCERO**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

---

This matter is before the court on Respondent's Motion for Technical

Correction of Decision. The motion is **GRANTED**. Footnote 2 on page 4 of the

opinion is amended to read as follows:

> Because Ligiowati does not advance an independent ground for
> withholding of removal, we do not consider her claim separately
> from Witjaksono's petition.

In addition, the sentence appearing on page 9 of the opinion, reading "Nor is this

circuit a stranger to the problem of DHS producing inadequate records," is

amended to read as follows, "Nor is this circuit a stranger to the problem of inadequate records of immigration proceedings."

A copy of the amended opinion is attached, filed nunc pro tunc to July 17, 2009.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

July 17, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HUMPHREY SARWONO
WITJAKSONO and LIGIOWATI
FNU,

Petitioners,

v.

No. 08-9540

ERIC H. HOLDER, JR.,* United States
Attorney General,

Respondent.

---

**PETITION FOR REVIEW OF AN ORDER
FROM THE BOARD OF IMMIGRATION APPEALS**

---

Lisa Suzanne Anderson (Houman Varzandeh with her on the briefs), VHF Law
Group, Los Angeles, California, for Petitioners.

William C. Minick (Linda S. Wernery, Assistant Director, with him on the briefs),
United States Department of Justice, Office of Immigration Litigation,
Washington, D.C., for Respondent.

---

Before **LUCERO**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

\* Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr., is substituted for
Michael B. Mukasey as United States Attorney General.

Humphrey Sarwono Witjaksono and his wife, Ligiowati,[1] seek review of the denial of their request for restriction on removal under 8 U.S.C. § 1231(b)(3) and protection under the Convention Against Torture ("CAT" or "the Convention"). Petitioners' application was denied by an Immigration Judge ("IJ"), and the Board of Immigration Appeals ("BIA" or the "Board") dismissed their appeal. They now petition this court for review of the BIA's order. We are also asked to review the BIA's denial of petitioners' motion to remand.

Witjaksono's primary argument is that he was denied due process because the transcript of his hearing before an IJ was defective. Due process entitles aliens to meaningful appellate review of their removal proceedings. To ensure such review, the government is charged with preparing a reasonably complete and accurate transcript of proceedings held before an IJ. The fifty-seven page transcript in this case is replete with nearly two hundred notations saying "indiscernible," and Witjaksono insists that this in and of itself constitutes a reversible due process violation.

In the context of an incomplete immigration transcript, whether there is a constitutional deprivation of due process centers on two inquiries: Does the alien

---

[1] Ligiowati has only one name. In the proceedings below, she was referred to as Ligiowati FNU. The acronym "FNU" stands for "family name unknown."

possess a protected interest to which Fifth Amendment process is due and, if so, was the individual afforded the process that was due? It is well settled that an alien in an immigration proceeding is entitled to a reasonably complete and accurate record to facilitate appellate review; we do not consider that issue further. And we readily conclude that the transcript before us is not reasonably complete and accurate.

But failure by the government to provide a complete record of the proceedings below does not constitute a due process violation unless the petitioner can show prejudice. The missing portions of the transcript before us consist almost exclusively of Witjaksono's own testimony, but Witjaksono failed to attempt to fill in the gaps despite BIA procedures permitting him to do so. This failure proves fatal to his claim. Witjaksono could reasonably be expected to make some effort to recreate the missing portions and thus we cannot conclude that the government's dereliction was prejudicial to a degree rising to the level of a denial of due process. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1) and (b)(2), we deny the petition for review.

**I**

Witjaksono and Ligiowati are natives and citizens of Indonesia. They are ethnically Chinese and practicing Catholics. Witjaksono entered the United States as a nonimmigrant tourist on April 16, 1999, and Ligiowati was similarly

admitted on November 16, 2000.  They have three children; the youngest was born in the United States and is a United States citizen.

After petitioners overstayed their visas, the Department of Homeland Security ("DHS") issued Notices to Appear charging them as deportable under the Immigration and Nationality Act ("INA").  See 8 U.S.C. § 1227(a)(1)(B).  Witjaksono filed an application for asylum, withholding of removal, and protection under the CAT, alleging ethnic and religious persecution.  Ligiowati was a rider on Witjaksono's application.[2]

On October 12, 2006, a hearing was held to consider the merits of petitioners' requests.  Witjaksono was the only witness to testify.  He was subject to direct and cross-examination and answered questions from the IJ.  Witjaksono testified that he and his family suffered violence and harassment because they are ethnically Chinese and Catholic and recounted five specific incidents.

First, Witjaksono described an encounter that occurred during his elementary schooling.  On this occasion, Muslim students identified him as Chinese and taunted him.  One student threw a rock that hit him on the head requiring stitches.

---

[2] Because Ligiowati does not advance an independent ground for withholding of removal, we do not consider her claim separately from Witjaksono's petition.

Second, Witjaksono testified about an attack on his vehicle. A group of five or six individuals approached the car he was driving while stopped at a traffic light. The group broke off both of the car's side mirrors.

Third, and perhaps most seriously, Witjaksono recalled a 1997 incident with an Indonesian soldier in which Witjaksono's car was allegedly blocked. Witjaksono honked his horn, the soldier exited the vehicle, knocked on Witjaksono's window, punched Witjaksono three times, and insulted him for being Chinese. Witjaksono did not require medical attention and did not report the incident to police as he believed the authorities would not take action because he is Chinese and Catholic.[3]

Fourth, Witjaksono testified that he was in Jakarta, Indonesia, during riots in 1998. He saw a building in his neighborhood burning and witnessed a group of individuals wearing traditional Muslim dress and carrying knives and sharpened sticks. Although he was not attacked, Witjaksono testified that he hid inside his

---

[3] Witjaksono's testimony on direct examination regarding this incident is nearly incomprehensible given the number of notations of "indiscernible" in this part of the record. The transcript does reveal that Witjaksono did not go to the hospital, but what is not clear from the testimony is whether he did not go to the hospital because he did not require medical attention or because he feared he would not be helped given his ethnic and religious heritage. As transcribed, the IJ asked why he did not go to hospital, and Witjaksono replied, "Because (Indiscernible) and I had (Indiscernible)." However, in his oral decision, the IJ stated that Witjaksono had testified that "he had no serious injury, explaining that he had only a headache from this incident." As Witjaksono does not dispute this finding on appeal, it governs our review.

house until the "situation had calmed down a bit." Because he feared for his safety, Witjaksono avoided public transportation and public gatherings.

Finally, Witjaksono recounted a 1999 incident that occurred after he had left Indonesia in which a Christian church was burned. Although it was in his neighborhood, he had not attended that particular church.

In an oral decision announced at the close of the hearing, the IJ denied all relief. Although the IJ did not make an explicit credibility determination, he assumed the truth of Witjaksono's testimony in concluding that petitioners were not entitled to relief. Witjaksono's application for asylum was denied as untimely and Witjaksono was ruled ineligible for withholding of removal because he had not shown that he suffered past persecution, that he would be individually targeted for persecution upon return, or that there was a pattern or practice of persecution against Catholic Indonesians or Indonesians of Chinese descent. Additionally, the IJ ruled that Witjaksono was not entitled to relief under the CAT because he did not show that it was more likely than not that he would be tortured. Witjaksono appealed to the BIA.

For appellate purposes, the government prepared a transcript of the proceedings before the IJ. In its final form, the transcript was fifty-seven pages long and contained approximately 189 notations of "(Indiscernible)." In his appeal to the BIA, Witjaksono argued that the transcript was inadequate, but he

did not attempt to fill the void by tender of an affidavit, sworn declaration, or otherwise. He also contended that the IJ erred by declining to make an explicit credibility determination, by failing to adequately consider Witjaksono's request for protection under the CAT, and by concluding that Witjaksono was not entitled to withholding of removal.[4] Witjaksono requested a remand to the IJ, claiming that he and his son would face persecution upon return to Indonesia because his son is a United States citizen.

In a written order issued by a single Board member, see 8 C.F.R. § 1003.1(e)(5), the BIA denied Witjaksono's motion for remand and dismissed his appeal. Because Witjaksono did not point to any material testimony omitted from the transcript, the BIA concluded that he had not demonstrated that the inadequate transcript adversely affected his application. The BIA also determined that Witjaksono failed to establish his claims of persecution.

## II

A BIA order dismissing an appeal constitutes a final order of removal which we review pursuant to 8 U.S.C. § 1252(a)(1) and (b)(2). See Sarr v. Gonzales, 474 F.3d 783, 790 (10th Cir. 2007). We may consult the oral decision of an IJ to the extent the BIA's order incorporates its reasoning. Id.

---

[4] Witjaksono did not appeal his asylum claim to the BIA, and he does not raise it before us. We therefore do not consider it.

Witjaksono brings four arguments on appeal to us: (1) the inadequate transcript deprived him of due process; (2) he is entitled to withholding of removal because he suffered past persecution and will likely suffer future persecution if forced to return to Indonesia; (3) he is eligible for protection under the CAT; and (4) the case must be remanded for consideration of his claim that he and his son will be targeted in Indonesia because his son is a United States citizen.

**A**

Witjaksono tells us that his hearing transcript is so deficient that it constitutes a denial of due process in that it precludes our review on appeal. This is a legal claim we consider de novo. Niang v. Gonzales, 422 F.3d 1187, 1196 (10th Cir. 2005); see Kheireddine v. Gonzales, 427 F.3d 80, 83-84 (1st Cir. 2005).

**1**

An elementary component of due process is the right to meaningful appellate review. See Oroh v. Holder, 561 F.3d 62, 65 (1st Cir. 2009); Garza-Moreno v. Gonzales, 489 F.3d 239, 241 (6th Cir. 2007); Kheireddine, 427 F.3d at 84; see also Hadjimehdigholi v. INS, 49 F.3d 642, 649 (10th Cir. 1995) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)). This right necessarily means one is entitled to a reasonably complete and accurate transcript,

or an adequate substitute. See Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996) (noting that one of "the most basic of due process protections" is "a complete record of the proceeding"). Without such a record, appellate review is not possible because a reviewing court cannot meaningfully scrutinize the proceedings below and a petitioner is unable to effectively challenge the bases of the decision in question. See Kheireddine, 427 F.3d at 84.

As to immigration hearings, the government is statutorily obligated to completely and accurately record removal proceedings. 8 U.S.C. § 1229a(b)(4)(C). Section 1229a(b)(4)(C) imposes upon the government a duty to keep "a complete record . . . of all testimony and evidence produced at the proceeding." Federal implementing regulations likewise require that the hearing "shall be recorded verbatim except for statements made off the record with the permission of the immigration judge." 8 C.F.R. § 1240.9.

Unfortunately, as our sibling circuits have chronicled, "[t]he problem of inaccurate or incomplete transcription of immigration proceedings is not recent." Kheireddine, 427 F.3d at 85; see, e.g., Garza-Moreno, 489 F.3d at 241; Ortiz-Salas v. INS, 992 F.2d 105, 106-07 (7th Cir. 1993); McLeod v. INS, 802 F.2d 89, 94-95 (3d Cir. 1986). Nor is this circuit a stranger to the problem of inadequate records of immigration proceedings. See Niania v. Gonzales, 222 F. App'x 684, 686 (10th Cir. 2007) (unpublished); Mondal v. Gonzales, 198 F. App'x 718, 722

(10th Cir. 2006) (unpublished).  In the case under review, there can be little dispute but that the government breached its duty to prepare a reasonably complete and accurate transcript.  Not only is the transcript replete with nearly two hundred notations of "indiscernible," but key portions of the hearing are all but incomprehensible.  For example, Witjaksono's initial testimony about being assaulted by an Indonesian soldier is utterly opaque:

> After I graduated school, (Indiscernible), when I went to park my car there was a car blocking me, in front of me.  Because I wanted to go to work I was planning to get to work early I pushed my horn in the car and (Indiscernible) they looked at me they said hey Chinese (Indiscernible) I'm from the Army and (Indiscernible) and I was (Indiscernible) and I (Indiscernible) and I asked for (Indiscernible).  So after I (Indiscernible) he left and got back in his car.

Only because the IJ asked follow-up questions does the record reveal that the soldier punched Witjaksono three times.

**2**

As in other contexts, the government's failure to produce an adequate transcript does not necessarily rise to the level of a due process violation mandating reversal or remand.  Oroh, 561 F.3d at 65; Ortiz-Salas, 992 F.2d at 106.  Rather, to demonstrate a denial of due process and obtain relief, an alien must show that the deficient transcript prejudiced his ability to perfect an appeal. Oroh, 561 F.3d at 65; Kheireddine, 427 F.3d at 85; cf. United States v. Kelly, 535 F.3d 1229, 1240-41 (10th Cir. 2008) (a violation of the Court Reporter's Act did

not require reversal because the defendant failed to show prejudice).  That is, an alien must show that the "gaps [in the transcript] relate to matters material to his case and that they materially affect his ability to obtain meaningful review." Oroh, 561 F.3d at 65 (quotations omitted).

"Prejudice is an amorphous concept, and necessarily so, given the wide variety of facts that may arise."  Kheireddine, 427 F.3d at 85.  Several foundational principles are clear.  See id. at 85-86.  An alien may not show prejudice if the information omitted from a transcript is immaterial, see McLeod, 802 F.2d at 85-86 (missing portions of transcript did not bear on legal or factual questions at issue in the hearing), nor may a petitioner demonstrate prejudice if the omissions in the record, assuming they were corrected in the manner proposed by the petitioner, would not alter the outcome of the proceedings, see Ibe v. Gonzales, 415 F.3d 142, 144 (1st Cir. 2005) (alleged omissions in record could not have affected outcome because petitioner lacked the statutory predicate for adjustment of status).  Neither may a petitioner meet the required showing of prejudice when the gaps in the transcript could reasonably be recreated but the alien fails to do so.[5]  See Oroh, 561 F.3d at 66 (missing material came during

---

[5] We do not foreclose the possibility that a transcript is so deficient that it is effectively no transcript at all.

testimony of petitioner and his attorney and could have been recreated on appeal to BIA).

With respect to an alien's ability to supplement a faulty transcript, we note that the BIA's regulations and its Practice Manual, published on its public website, expressly provide for such supplementation. See 8 C.F.R. § 1003.1(d)(3)(iv), (e)(2); Executive Office for Immigration Review, Dep't of Justice, Board of Immigration Appeals Practice Manual (2004), available at http://www.usdoj.gov/eoir/vll/qapracmanual/apptmtn4.htm [hereinafter BIA Practice Manual]. Under these rules and practices, an alien should immediately file with the BIA Clerk's Office a "Request for Correction of Transcript," alerting the Board to the defect. BIA Practice Manual, ch. 4.2(f)(iii), at 51. If the Board does not or cannot remedy the defect "and the party believes that defect to be significant to the party's argument or the adjudication of the appeal, the party should identify the defect and argue its significance with specificity in the appeal brief." Id. at 52. An alien may file a sworn, detailed statement or affidavit attesting to the significance of the defect and attach it to his brief. Id.; see also id. ch. 5.2(f), at 80. "The Board will [then] consider any allegations of transcript error in the course of adjudicating the appeal." Id. ch. 4.2(f)(iii), at 52.

If the missing portions of a transcript can be reasonably recreated, the affidavit should attest to the missing testimony. See id. When it would be

unreasonable to expect the alien to recreate the missing portions of a transcript—if, for example, the omissions are from the testimony of a third-party witness—the alien should explain that it is impractical to do so. In the latter situation, the alien should also file a motion to remand the case for further factfinding.[6] See 8 C.F.R. § 1003.1(d)(3)(iv) ("A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand.").

When an alien follows these procedures, the BIA is able to evaluate whether the "gaps [in the transcript] relate to matters material to [the] case and [whether] they materially affect [the alien's] ability to obtain meaningful review." Oroh, 561 F.3d at 65 (quotation omitted). Moreover, if the BIA concludes that a defective transcript did not cause prejudice, these procedures create a record that facilitates the meaningful and effective judicial review to which a petitioner is entitled.

**3**

Witjaksono ultimately fails to demonstrate prejudice and a resulting denial of due process because the missing material is his own testimony and he did not

---

[6] A single member of the BIA may remand a petition to an IJ when a defective transcript requires it. 8 C.F.R. § 1003.1(e)(2) ("[A] single Board member may adjudicate . . . a case where remand is required because of a defective or missing transcript.").

- 13 -

attempt to recreate it.  See id.; see also Munoz-Monsalve v. Mukasey, 551 F.3d 1, 9 (1st Cir. 2008) (no prejudice when "the petitioner made no effort before the BIA (or before [the court], for that matter) either to produce that record or to explain why it is not available").  The missing portions of the transcript consist almost exclusively of Witjaksono's own testimony and only a few months had elapsed between the hearing before the IJ and the filing of Witjaksono's brief to the BIA.[7]  Under these circumstances, it is reasonable to expect him to recreate the omissions.  See Oroh, 561 F.3d at 66.  But Witjaksono made no effort whatsoever to do so.  Witjaksono would not have to recall his precise testimony, but he should have at least attested to the missing facts that he believes warrant relief.  That failure is fatal to his claimed denial of due process.[8]

**B**

---

[7] Some notations of "(Indiscernible)" are from statements of other participants in the hearing—Witjaksono's attorney, the government, and the IJ. But these missing portions generally comprise the questions Witjaksono was being asked, not his answers.  Although the questions provide the context for Witjaksono's answers, it is apparent from the transcript that the substantive evidence was in his responses.

[8] Our holding should not be read as an invitation to the government to provide inadequate and incomplete transcripts to burden aliens with the task of recreating removal hearings.  We stress that the government has a constitutional and statutory obligation to provide reasonably accurate and complete transcripts of immigration proceedings.  We expect the government to take this duty seriously.  In cases in which the government's dereliction in this duty prejudices an alien, we will not hesitate to take corrective action.

- 14 -

Witjaksono also argues that he is entitled to withholding of removal because he has suffered past persecution in Indonesia and because he has shown that he will suffer future persecution if forced to return. "Generally speaking, an alien may not be removed to a particular country if he or she can establish a clear probability of persecution in that country on the basis of race, religion, nationality, membership in a particular social group, or political opinion." Elzour v. Ashcroft, 378 F.3d 1143, 1149 (10th Cir. 2004); see 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." Tulengkey v. Gonzales, 425 F.3d 1277, 1280 (10th Cir. 2005) (quotation omitted). "Such persecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." Hayrapetyan v. Mukasey, 534 F.3d 1330, 1337 (10th Cir. 2008) (quotation omitted). On establishing such past persecution, "it shall be presumed that the [alien's] life or freedom would be threatened in the future in the country of removal." 8 C.F.R. § 1208.16(b)(1)(I). Without a showing of past persecution, an alien must demonstrate that it is more likely than not that he will be individually persecuted in the future. § 1208.16(b)(2).

We review the BIA's factual findings for substantial evidence. As before, our review of its legal conclusions is de novo. Vicente-Elias v. Mukasey, 532 F.3d 1086, 1091 (10th Cir. 2008). Under a substantial evidence standard, factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quotation omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." Id. (citing Nazaraghaie v. INS, 102 F.3d 460, 463 n.2 (10th Cir. 1996)).

Even accepting Witjaksono's testimony at face value,[9] the BIA's determination that Witjaksono did not establish past persecution is supported by substantial evidence. Verbal taunts, while offensive, fall within the bounds of harassment and discrimination, not persecution. See Vatulev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003). The violent episode Witjaksono recounted that occurred during elementary school and the incident in which his car was damaged did not result in serious injury. More troubling is Witjaksono's account of being assaulted by an Indonesian soldier. But while we do not gainsay the significance

_____

[9] Because neither the IJ nor the BIA expressly determined whether Witjaksono was credible, we accept his testimony as true. See Hartooni v. INS, 21 F.3d 336, 342 (9th Cir. 1994) ("Absent an explicit finding that a specific statement by the petitioner is not credible we are required to accept her testimony as true.").

- 16 -

of this incident, it appears to have been the lone occasion in Witjaksono's adult life in which he was physically injured, albeit not requiring medical attention. See Prasad v. INS, 47 F.3d 336, 339 (9th Cir. 1995) (finding no persecution because, inter alia, petitioner did not require medical treatment as a result of an attack). Witjaksono's descriptions of the 1998 Jakarta riots and the 1999 church burning do not mandate relief. Witjaksono does not suggest that he was individually targeted or that he was physically harmed. Even considering all incidents cumulatively, see Korablina v. INS, 158 F.3d 1038, 1044 (9th Cir. 1998), we cannot say that a reasonable adjudicator would be compelled to conclude that Witjaksono suffered persecution.

Because Witjaksono did not show past persecution, he is entitled to withholding of removal only if he can establish that it is more likely than not that he will be individually persecuted in the future, 8 C.F.R. § 1208.16(b)(2), or that (1) "there is a pattern or practice of persecution of a group of persons similarly situated to [Witjaksono]," § 1208.16(b)(2)(I), and that (2) because of his "inclusion in and identification with such group[,] . . . it is more likely than not that [Witjaksono's] life or freedom would be threatened upon return." § 1208.16(b)(2)(ii).

Witjaksono does not argue that he will be individually targeted for persecution. Moreover, despite the IJ's finding that there is not a pattern or

practice of persecution against Christian Indonesians or Indonesians of Chinese descent, Witjaksono did not challenge this conclusion on appeal to the BIA. Because he did not exhaust his administrative remedies on this issue, we lack jurisdiction to consider it. See Sidabutar v. Gonzales, 503 F.3d 1116, 1118 (10th Cir. 2007).

## C

Witjaksono insists that the IJ (and by implication, the BIA, to the extent it adopted the IJ's reasoning) committed an error of law by improperly conflating his request for relief under the Convention Against Torture with his application for withholding of removal. He also argues that he is entitled to relief under the Convention.

Removal of an alien to a country where he is more likely than not to face torture at the hands of "a public official, or at the instigation or with the acquiescence of such an official" is prohibited under the Convention. Cruz-Funez v. Gonzales, 406 F.3d 1187, 1192 (10th Cir. 2005); see 8 C.F.R. § 1208.16(c)(2). "Relief under the CAT is mandatory if the convention's criteria are satisfied." Ismaiel v. Mukasey, 516 F.3d 1198, 1204 (10th Cir. 2008) (an alien meeting the CAT's criteria "shall be granted" withholding of removal or, at a minimum, deferral of removal (citing 8 C.F.R. § 1208.16(c)(4))).

We are wholly unpersuaded by Witjaksono's claim that the IJ conflated the CAT and withholding of removal inquiries. To the contrary, the IJ expressly acknowledged that Witjaksono's application sought protection under the Convention as well as withholding of removal and correctly stated the legal standards applicable to each claim. Although the IJ's analysis of Witjaksono's CAT claim is sparse on detail, the IJ "has no duty to write an exegesis on every contention. What is required is merely that [he] consider the issues raised, and announce [his] decision in terms sufficient to enable a reviewing court to perceive that [he] has heard and thought and not merely reacted." Becerra-Jimenez v. INS, 829 F.2d 996, 1000 (10th Cir. 1987) (quoting Osuchukwu v. INS, 744 F.2d 1136, 1142-43 (5th Cir. 1984)). As the BIA recognized on appeal, "[t]he Immigration Judge fully considered [Witjaksono's] application as one for withholding of removal under the Convention Against Torture and adjudicated it along with [Witjaksono's] application for withholding of removal under the Act."

In addition, the IJ's determination regarding the CAT claim is supported by substantial evidence. Witjaksono relies on the same incidents for this claim as he does for his claim of persecution. But that evidence does not indicate that the Indonesian government will torture him or acquiesce in his torture. See Ba v. Mukasey, 539 F.3d 1265, 1271 (10th Cir. 2008). The most serious incident Witjaksono describes—when an Indonesian soldier punched him in the

- 19 -

face—appears isolated and not demonstrative of official behavior. Accordingly, we affirm the BIA's denial of protection under the CAT.

**D**

Witjaksono claims the BIA erred in denying his motion to remand. In that motion, Witjaksono requested the BIA remand his petition to the IJ for consideration of his argument that conditions in Indonesia had deteriorated such that Witjaksono and his son would be subject to harm upon return because his child is identifiably American. Witjaksono relied exclusively on a United States Department of State Travel Warning issued in May 2007 ("the Warning"), which warned of the possibility of terrorist attacks against Americans, other Western citizens, and Indonesians. In denying the motion, the BIA reasoned that the Warning was general in nature and did not indicate that Americans were specifically likely to be targeted and that the Warning did not contain new information. We review the denial of a motion to remand for an abuse of discretion.[10] An abuse of discretion occurs when the BIA's "decision provides no rational explanation, inexplicably departs from established policies, is devoid of

---

[10] The BIA applies the same legal standard to motions to reopen and motions to remand. See In re L-V-K, 22 I. & N. Dec. 976, 978 (BIA 1999); 8 C.F.R. § 1003.2(c)(4). Because we review a denial of a motion to reopen for an abuse of discretion, see Infanzon v. Ashcroft, 386 F.3d 1359, 1362 (10th Cir. 2004), we employ that standard when reviewing the denial of a motion to remand.

any reasoning, or contains only summary or conclusory statements." <u>Infanzon</u>, 386 F.3d at 1362 (quotation omitted).

In its order, the BIA explained that the Warning "merely serves to warn Americans of the possible <u>inherent</u> dangers of travel in Indonesia" (emphasis added). This is a reasonable interpretation of the Warning, which states that "[t]errorist attacks in Indonesia could occur at any time and could be directed against any location, including those frequented by foreigners, as well as identifiably American or other Western facilities or businesses in Indonesia." In concluding that this generalized warning did not support Witjaksono's specific claim that he and his son would be targeted, the BIA did not abuse its discretion.

## III

For the reasons stated, we **DENY** the petition for review.