FILED
United States Court of Appeals
Tenth Circuit

September 13, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MAHMOUD SAID-SAAD,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 10-9507
(Petition for Review)

---

ORDER AND JUDGMENT[*]

---

Before **HARTZ** and **PORFILIO**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

Mahmoud Said-Saad, a native of Lebanon, seeks judicial review of the

denial by the Board of Immigration Appeals (BIA) of his requests for restriction

on removal and protection under the Convention Against Torture (CAT).  He also

asserts that the BIA erred in denying his motion to remand for consideration of

additional evidence.  We deny the petition for review.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

### A.    Conduct in the United States

Using a false name and a photo-altered passport obtained in Lebanon, Mr. Saad entered the United States in August 1990.  He then traveled to Tulsa, Oklahoma, where some relatives lived, and began working.  Under the name on the passport, he applied for and received temporary protected status, including work authorization, from 1992 to 1993.[1]  He also obtained an Oklahoma driver's license under the false name.

In 2004 Mr. Saad applied for adjustment of status in his own name.  The application form required him to certify, under penalty of perjury, that he had never sought to procure an immigration benefit by fraud or willful misrepresentation.  About that time he obtained a social-security card in his real name.

To make his driver's license consistent with his adjustment-of-status application, Mr. Saad presented himself to the Oklahoma driver's license bureau, proffered his old license, and attempted to change the license name to his real name.  The Oklahoma Highway Patrol brought this effort to the attention of

---

[1]    Temporary protected status affords eligible aliens protection from removal upon a determination by the Attorney General that conditions in their own country prevent their safe return.  *See* 8 U.S.C. § 1254a.  Nationals of Lebanon were designated for temporary protected status from March 27, 1991 through March 28, 1993.  *See* Extension of Designation of Lebanon Under Temporary Protected Status Program, 57 Fed. Reg. 2931-01 (Jan. 24, 1992).

immigration officials. The Department of Homeland Security, Citizenship and Immigration Services, determined that Mr. Saad had two immigration files, one under the false name and the other in his true name. It therefore denied the application for adjustment of status.

In 2006 Mr. Saad was placed in removal proceedings and issued a notice to appear charging him with fraudulently or willfully misrepresenting a material fact in seeking to gain admission into the United States, in violation of 8 U.S.C. § 1182(a)(6)(C)(i). On March 5, 2007, after commencement of removal proceedings and more than 16 years after his entry into the United States, he filed an application for asylum, restriction on removal, and protection under the CAT.

## B. Removal Proceedings

### 1. The Hearing

At the hearing before the immigration judge (IJ), Mr. Saad did not contest his removability or challenge the government's chronology of events leading to the notice to appear. Instead, he attempted to demonstrate that he had been persecuted in the past and would be persecuted and perhaps killed if he returned to Lebanon.

An expert witness testified at length about conditions in Lebanon. Although the expert had not met Mr. Saad, he opined--based on his knowledge of Lebanon and examination of an affidavit submitted by Mr. Saad--that Mr. Saad would be persecuted, tortured, or possibly killed if he returned to any place in

-3-

Lebanon. He said that Hezbollah "is a terrorist organization, " Admin. R. at 165, and the situation in Lebanon "is becoming worse on a daily basis," *id.* at 180.

For documentary evidence, Mr. Saad submitted media reports on the activities of Iran and Hezbollah in Lebanon, two of his own affidavits, the expert's report, and letters of recommendation from friends and employers. Also entered into evidence were Mr. Saad's immigration documents and State Department Country Reports on Human Rights Practices and Terrorism.

Most importantly, Mr. Saad himself testified. He gave an account of several incidents in Lebanon, including his two-day incarceration after being stopped at a roadblock and the events surrounding the burning of his home. He also stated his reasons for leaving that country and why he had not submitted an earlier application for asylum. His testimony was disjointed, inconsistent, and confusing. Indeed, at one point the IJ interrupted Mr. Saad's testimony to state "I'm just trying to get a coherent explanation of what's gone on in Lebanon. A chronological, coherent explanation, and you know, it's his burden to convince me and all I am is confused." *Id.* at 248.

### 2. The Rulings Below

The IJ issued a 27-page decision denying relief. The decision set forth the procedural history; provided the legal standards for asylum, restriction on removal, and CAT relief; and detailed the documentary and testimonial evidence. It then turned to the pivotal issue: Mr. Saad's credibility. The IJ found

inconsistencies in Mr. Saad's testimony regarding his initial awareness of asylum, his reasons for leaving Lebanon, how he learned of temporary protected status, his membership in a political organization, his stop at a Syrian checkpoint, and the sequence of events concerning the burning of his house. Also, the IJ took into account Mr. Saad's previous use of "fraud to obtain what he desired and deemed in his best interests." Admin. R. at 81. Some of the noted inconsistencies were minor, but with respect to the "material elements" of the case, Mr. Saad "quite simply" was "unworthy of belief" and lacking in veracity. *Id.* at 83.

The IJ concluded that Mr. Saad's asylum application was untimely and that he had not demonstrated special or changed circumstances affecting his eligibility for asylum. Therefore he was statutorily barred from asylum relief. Additionally, as a result of his lack of credibility, he had not demonstrated past persecution or torture, a well-founded fear of future persecution, the probability of persecution, or the possibility of torture upon his return to Lebanon. Accordingly, Mr. Saad was not entitled to restriction on removal. And the evidence did not establish a likelihood of torture or the governmental consent or acquiescence necessary to establish eligibility for CAT relief.

Mr. Saad appealed the IJ's adverse ruling to the BIA and requested a remand for consideration of new evidence: media accounts of 2008 events in Lebanon and a letter written by a licensed professional counselor summarizing the results of a clinical assessment conducted some two months after the IJ issued his

decision.  The brief letter stated that Mr. Saad had "exhibited symptoms of anxiety such as difficulty staying on task, poor concentration, and limited memory."  Admin. R. at 33.  Mr. Saad claimed that these traits contributed to the IJ's credibility assessment and that he had not obtained such a report before the hearing because until the IJ's decision, he "was unaware, and had no reason to be aware, that the I.J. would take such a harshly critical view of his testimony, and because he had no prior contact or familiarity with the psychology profession."  *Id.* at 16.

In a three-page opinion, the BIA determined that Mr. Saad was "statutorily ineligible for asylum as he did not submit a timely application or present any valid exception to the 1-year filing requirement."  *Id.* at 3.  Further, the IJ "provided specific and cogent reasons for finding the respondent incredible," and therefore the negative credibility determination was not clearly erroneous.  *Id.* And finally, even assuming that Mr. Saad was credible, he had "not established a more likely than not probability of suffering persecution upon his return to Lebanon on account of his political opinion or any other ground under the [Immigration] Act."  *Id.* at 4.  It affirmed the IJ's decision.

In considering the motion to remand, the BIA determined that the additional country-condition information was not material to Mr. Saad's application for relief and the psychological assessment was not previously

-6-

unavailable. Thus, the BIA concluded, the supplemental filings did not present an adequate basis for remand.

## II.    DISCUSSION

### A.    Denial of Relief

Mr. Saad appeals, arguing that the BIA erred in affirming the IJ's adverse credibility determination with regard to his restriction-on-removal and CAT claims. He does not pursue his asylum claim on appeal.

"Where the BIA's decision relies upon an IJ's initial findings, we must ensure that such determinations are substantially reasonable." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (internal quotation marks omitted). We sustain adverse credibility findings as long as they are "substantially reasonable" and the IJ has given "specific, cogent reasons for disbelieving" an applicant's testimony. *Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 (10th Cir. 2008) (internal quotation marks omitted). An adverse credibility determination may be based on "inconsistencies in the witness' testimony, lack of sufficient detail, . . . implausibility, . . . or [] testimonial demeanor." *Elzour v. Ashcroft,* 378 F.3d 1143, 1152-53 (10th Cir. 2004).[2]

---

[2]    8 U.S.C. §§ 1158(b)(1)(B)(iii) and 1229a(c)(4)(C) state:

> Considering the totality of the circumstances, and all relevant factors, [an IJ] may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent

(continued...)

-7-

In this instance, "the IJ's credibility determination was eminently reasonable." *Ismaiel*, 516 F.3d at 1205. As an initial matter, Mr. Saad's previous misrepresentations in agency documents cast a shadow over his later testimony. The IJ fairly characterized Mr. Saad's written statements and oral testimony as confusing, conflicting, sketchy, and implausible. His descriptions of encounters with Syrians and Hezbollah supporters were inconsistent and not tied to a specific time-frame. Further, his explanation of why he remained unaware of the availability of asylum relief for 16 years–or until he was placed in removal proceedings and received advice from his second lawyer–was dubious at best.

The IJ and BIA could reasonably refuse to believe Mr. Saad's claims of past persecution or torture. And reviewing the evidence in light of the IJ's credibility finding, the agency was justified in remaining unpersuaded of a

_____

[2](...continued)
> plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

probability that Mr. Saad would be persecuted or tortured upon a return to Lebanon.

## B.    Denial of motion to remand

Mr. Saad also claims that the BIA erred in denying his motion to remand for consideration of newly submitted material. "We review the denial of a motion to remand for an abuse of discretion." *Witjaksono v. Holder*, 573 F.3d 968, 979 (10th Cir. 2009). "An abuse of discretion occurs when the BIA's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation marks omitted). In concluding that Mr. Saad's additional information was insufficient to require a remand, the BIA did not abuse its discretion.

## III.  CONCLUSION

For the reasons stated, we DENY the petition for review.

Entered for the Court

Harris L Hartz
Circuit Judge