FILED
United States Court of Appeals
Tenth Circuit

November 30, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEONARD SUPUSEPA,

        Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General
of the United States,

        Respondent.

No. 10-9516

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has

determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The

case is therefore ordered submitted without oral argument.

Petitioner Leonard Supusepa, a native and citizen of Indonesia, seeks review of a

Board of Immigration Appeals ("BIA") order denying his applications for asylum,

restriction on removal, and relief under the Convention Against Torture ("CAT"). We

_____

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

have jurisdiction under 8 U.S.C. § 1252(a)(5) and DENY Mr. Supusepa's petition for review.

## I.  BACKGROUND

Mr. Supusepa entered the United States on March 30, 1999 with permission to remain until September 29, 1999.  He stayed in the United States, however, much longer than he was permitted.  Consequently, on December 4, 2003, the Department of Homeland Security issued Mr. Supusepa a Notice to Appear in which it alleged that he was removable.  Mr. Supusepa conceded removability but requested political asylum, restriction on removal, and relief under the CAT.  Generally, Mr. Supusepa alleges that he is a Christian from Ambon, a predominately Christian island in a predominately Muslim country, and that he will suffer ethnic, religious, and political persecution if he is forced to return to Indonesia.

In a hearing before an Immigration Judge ("IJ"), Mr. Supusepa testified regarding the historic tension and violent clashes between Christians and Muslims in Indonesia, and between the Ambonese and other indigenous people of the country.  He also detailed two instances in which he was personally the victim of violent religious attacks.

First, he alleged that he was attacked by Muslims while sitting at a café in May 1997.  Specifically, Mr. Supusepa claimed that a group of Muslims falsely accused him and others of damaging a mosque and attacked them with bats and swords.  Although Mr. Supusepa claims to have suffered a cut on his leg during the attack that required medical attention, he did not produce any documentation or other proof of that injury.

Second, Mr. Supusepa testified that he was attacked by Muslims while riding on a bus with a friend. According to Mr. Supusepa, he was able to escape the attackers without injury, but his friend, who had run from the bus in a different direction, was killed. Although Mr. Supusepa claimed that *Time* magazine published a detailed article about this attack and his friend's death, he was unable to produce a copy of the article at the hearing.

Additionally, Mr. Supusepa claimed that he will likely be subjected to future persecution and torture if he returns to Indonesia, because of his involvement with an Ambonese separatist group, the Republic of South Maluku ("RMS"). Mr. Supusepa testified that he has provided financial support to RMS and that when an Indonesian official came to Denver, he displayed an RMS poster in his vehicle and parked it in a place where the official would see it. Allegedly, Mr. Supusepa's relatives in Indonesia subsequently informed him that the Indonesian government had been looking for him and had inquired about his involvement with RMS.

The IJ ultimately concluded that Mr. Supusepa's application for asylum was untimely. Furthermore, the IJ found that Mr. Supusepa's testimony was not credible, that State Department reports suggested conditions in Indonesia were improving, and that without corroborating evidence, Mr. Supusepa was unable to satisfy his burden of proving past persecution or the likelihood of future persecution or torture. Accordingly, the IJ denied Mr. Supusepa's applications for asylum, restriction on removal, and relief under the CAT.

Mr. Supusepa then appealed the IJ's decision. The BIA affirmed, holding that: (1) Mr. Supusepa's testimony regarding the two religious attacks did not establish past persecution; (2) Mr. Supusepa did not establish a likelihood of future persecution; and (3) Mr. Supusepa did not establish a likelihood that he would be tortured if he returned to Indonesia. Mr. Supusepa now petitions this court for review of the BIA's order.

## II.  DISCUSSION

Generally, an alien may not be removed to a country in which his life or freedom will be threatened because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien may support his request for a restriction on removal by demonstrating: (1) "past persecution in the proposed country of removal on account of one of the protected grounds;" or (2) "that it is more likely than not that [he] would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123–24 (10th Cir. 2007) (quotations omitted). For purposes of establishing a likelihood of future persecution, an alien bears the burden of showing either that he will likely be singled out for persecution or that he is a member of a group that is subject to a pattern or practice of persecution. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009).

"Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Id*. at 976 (quotations omitted). "[T]he ultimate

determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Id*. at 977 (quotations omitted). We review the BIA's determinations of past and future persecution for substantial evidence and will only reverse them if "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotations omitted).

Mr. Supusepa argues that the BIA's order is erroneous in three respects. First, he objects to the BIA's determination that he failed to establish past persecution. His argument in this regard is essentially that the BIA did not afford his testimony sufficient weight. Under the substantial evidence standard, however, we will not reassess the weight of the evidence presented below. *Sidabutar*, 503 F.3d at 1122. Moreover, Mr. Supusepa does not direct us to any evidence in the record that would compel a finding contrary to the BIA's on this point. Accordingly, we conclude that substantial evidence supports the BIA's determination that Mr. Supusepa did not demonstrate past persecution.

Second, Mr. Supusepa contends that the BIA erred in determining that he did not establish a likelihood of future persecution. For this argument, Mr. Supusepa primarily objects to the BIA's determination that "[s]ome of the documents that [Mr. Supusepa] submitted in support of his claim are several years old and do not document current country conditions in Indonesia." In holding that Mr. Supusepa failed to carry his burden with respect to future persecution, the BIA relied, in part, on a State Department report that "identifies a few sporadic incidents of tension between religious groups, but also

indicates that there have been improvements in the relations between religions." Based on this report and other documents provided by the parties, the BIA determined that reported incidents of religious violence were "not sufficiently widespread to support a claim that [Mr. Supusepa] is more likely than not to be persecuted in Indonesia if he is returned there." Mr. Supusepa contends that because the State Department report contains some accounts of widespread violence and human rights abuses throughout Indonesia, the BIA's factual determination is not supported by substantial evidence. We disagree.

Although the record contains some evidence of violence throughout Indonesia, it also contains evidence which supports the BIA's finding that the violence is predominantly localized. Indeed, the State Department report indicates that, "[i]n Central Sulawesi, Maluku, and North Maluku, religiously motivated violence and vigilante acts occurred less frequently than in previous years," and that "[d]uring the year attacks against churches continued, primarily in West and East Java, although less frequently than in the past." Reminded that "[i]t is not our prerogative to reweigh evidence, but only to decide if substantial evidence supports the [agency's] decision," *Sidabutar*, 503 F.3d at 1125 (quotations omitted), we conclude that substantial evidence supports the BIA's determination with respect to the likelihood of future persecution.

Third, and finally, Mr. Supusepa objects to the BIA's determination that he failed to establish a likelihood of future torture. He contends that he "presented compelling evidence that he faces a likelihood of torture from two separate groups: (1) from Islamic

- 6 -

extremists on the basis of his Christianity; and (2) from the Indonesian government on the basis of his support of the RMS separatist movement." This claim is, like the rest of Mr. Supusepa's claims, nothing more than a "weight of the evidence" argument, and Mr. Supusepa does not direct us to any evidence in the record that would compel a finding contrary to the BIA's on this point. Indeed, he provides no record citations whatsoever to support his CAT claim. Accordingly, we see no basis for disturbing the BIA's denial of Mr. Supusepa's CAT request.

### III. CONCLUSION

For the foregoing reasons, we DENY Mr. Supusepa's petition.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge