**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KAMMAL HASSAN ALI,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 13-9544
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is therefore ordered

submitted without oral argument.

Petitioner Kammal Hassan Ali, a native of Ethiopia and a member of the Oromo

tribal group, seeks review of the Board of Immigration Appeals' order dismissing his

appeal from the denial of his application for asylum, withholding of removal, and relief

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

under the Convention Against Torture.

In 1996, when Petitioner was sixteen years old, Petitioner's family left Ethiopia and went to a refugee camp in Kenya. In 1999, Petitioner's mother was granted refugee status and permitted to enter the United States with her ten children, including Petitioner. Petitioner subsequently became a lawful permanent resident. However, in 2001 Petitioner was convicted of a domestic violence crime that made him removable under 8 U.S.C. § 1227(a)(2)(E)(i). Petitioner conceded removability but requested asylum, withholding of removal, and protection under the Convention Against Torture. As the basis for this requested relief, he asserted: "My dad was killed in 1996 by the Ethiopian government because he was an active member of the OLF (Oromo Liberation Front). All my family (mom, siblings) have also been arrested and harmed because of this." (R. at 731.) Petitioner requested relief based on his membership in the Oromo tribal group and his family's association with the OLF political group.

At his hearing before an immigration judge, Petitioner testified: "All I remember is just problems happened to my father, due to the fact that he was participating in a political organization called Oromo Liberation Front. That's all I know, but, I don't know anything else." (R. at 157.) At one point in the hearing, he testified that his "father was taken by the government troops," (R. at 145), but he stated he did not know any other details about this incident. When asked if anything bad happened to his mother or his siblings in Ethiopia, he responded, "I don't remember anything like, any problems when I was young, and was too young to remember all the problems that happened, even if it's

happened, so." (R. at 147.)  When specifically asked about the assertion in his asylum application that his mother and siblings had been arrested, he testified they were arrested but he didn't know when or why this occurred.  He testified: "I don't really remember what had happened, the political side, and, what exactly went, all I know is, like, maybe, things, the fact that they arrest the parents, and my siblings.  That's all I know.  And, that's all I know, but, I don't know anything else relating to politics."  (R. at 161.)  When asked about his 2001 domestic violence conviction, Petitioner testified he did not "really remember what, exactly, happened" that led to this conviction.  (R. at 151.)  When asked if he hurt his wife or if there was physical contact between them, he stated, "Okay, I really didn't, but I, I don't think, I, I'm, I remember hitting her, or, but, there was problems."  (R. at 151.)   The only other person who testified at Petitioner's hearing was his ex-wife, who explained the basis for the domestic violence conviction and appeared to contradict Petitioner's testimony regarding the amount of time he spent with their children after they stopped living together.  Besides his own vague testimony, Petitioner did not present any other testimonial or documentary evidence to support his assertions regarding his family's involvement with the OLF and mistreatment in Ethiopia.

At the end of the hearing, the immigration judge stated:  "[A]fter having carefully observed the respondent's testimony and his demeanor throughout these proceedings, I find that his testimony is not credible.  The testimony was not sufficiently detailed.  The respondent was not responsive to questions posed.  His answers were not consistent with this application for asylum, at this time."  (R. at 89.)  The immigration judge did not find

it credible that Petitioner was unable to remember anything that occurred when he was sixteen years old. The immigration judge also noted that Petitioner's mother and nine siblings all lived in the United States and could presumably have testified about "what happened to the family, why they were here in the United States as refugees, what happened to the father, was he a member of the Oromo Liberation Front, did they arrest him, did they take him away, did they kill him, were they arrested." (R. at 88). However, Petitioner not only failed to present such corroborating testimony, but he also failed to present even a single affidavit or letter from one of his family members to corroborate his assertions and fill in the details he allegedly did not remember. Thus, after a review of the record, the immigration judge concluded that Petitioner had not proven a well-founded fear of persecution on account of any of the five enumerated grounds for asylum and withholding of removal. The immigration judge also concluded that Petitioner had not proven it was more likely than not he would be subject to torture if removed to Ethiopia. The immigration judge accordingly denied Petitioner's application for relief, and the Board of Immigration Appeals affirmed. This petition for review followed.

In reviewing the agency's decision, we consider any legal questions de novo and review the agency's factual findings, including any credibility determinations, under the substantial evidence standard. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Under this standard, "'the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (quoting 8 U.S.C. § 1252(b)(4)(B))." "[O]ur

duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole," *id.* (internal quotation marks omitted), and "we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable," *Diallo v. Gonzales*, 447 F.3d 1274, 1283 (10th Cir. 2006).

Under this deferential standard of review, we affirm. We conclude that the immigration judge's adverse credibility finding is substantially reasonable and supported by the record. While Petitioner asserts he was simply nervous and had problems with his memory, the record does not compel the conclusion that the immigration judge erred in attributing the defects in Petitioner's testimony to a lack of credibility instead. Petitioner also argues that even if his testimony is not considered credible, the country reports and other background information in the record support his assertion that he has a well-founded fear of persecution based on his family's participation with the OLF as well as his ethnic identity as an Oromo. However, apart from testimony that the immigration judge found to lack credibility, there is no evidence to support Petitioner's assertion that his family was involved with the OLF. Thus, the record does not compel the conclusion that Petitioner has a well-founded fear of persecution on account of an imputed political opinion. Likewise, while the record contains significant support for the conclusion that the Ethiopian government's treatment of its citizens—particularly the 40% of the population who are Oromo—is far from ideal, the record as a whole does not *compel* the conclusion that Petitioner has a well-founded fear of being persecuted based on his

ethnicity if he returns to Ethiopia.  *Cf. Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (noting that persecution is more than simply harassment or discrimination).

For the foregoing reasons, we conclude that the agency's decision was supported by substantial evidence, and we accordingly **DENY** the petition for review.  On November 28, 2013, a member of this panel granted Petitioner's motion for an emergency stay of removal in order for the court to more fully consider the merits of this case. Having now thoroughly considered the merits of the petition, and concluding that the agency's decision should be affirmed, we **DISSOLVE** the stay.

ENTERED FOR THE COURT

Monroe G. McKay
Circuit Judge

-6-