**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 17, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————

VOLODYMYR LYSAK; IRYNA
CHERNII,

      Petitioners,

v.

LORETTA E. LYNCH, United States
Attorney General,[*]

      Respondent.

No. 15-9501
(Petition for Review)

————————————————

**ORDER AND JUDGMENT**[1][**]
————————————————

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.
————————————————

    An Immigration Judge ("IJ") denied Volodymyr Lysak's application for

asylum and for relief under the Convention Against Torture ("CAT").[2] The Board of

Immigration Appeals ("BIA") affirmed. Lysak now petitions for review. Exercising

jurisdiction under 8 U.S.C. § 1252, we deny the petition.

———————————————————

[*] Pursuant to Fed. R. App. P. 43(c)(2) Eric J. Holder, Jr. is replaced by Loretta
E. Lynch as the United States Attorney General.

[**] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[*]

[2] Lysak is married to Petitioner Iryna Chernii. Chernii is a derivative
beneficiary of her husband and is "included in [his] request for asylum." 8 C.F.R. §
1208.3(a). We are thus exclusively concerned with the merits of Lysak's claims.

**I**

Lysak is a native of Ukraine. In 2005, Lysak and his two business partners started a company in the City of Ternopil selling cell phone credits. Between 2005 and 2007, two Ukranian police officers demanded bribes from Lysak and his business partners. Lysak initially paid the bribes, but later reduced the amount he paid because he could no longer afford the full amount demanded. In his asylum hearing, Lysak explained that he was also motivated to reduce the payment because he was opposed to government corruption, and thought that a government should protect its citizens. After Lysak reduced his payments, the police physically beat him and demanded $30,000 by November 2007. Lysak knew it would be impossible to collect that large a sum, and, instead of paying, fled to the United States under a valid work visa. Lysak maintained valid visas through late 2012, after which time he applied for asylum, alleging the police persecuted him due to his refusal to accede to their demands, his political opinion against government corruption, and his membership in the social group "males between the ages 18 and 55 who open a private business and [are] opposed to paying government bribes." He also seeks relief under the CAT. The IJ denied his application, and the BIA affirmed.

**II**

To secure asylum, an applicant must prove "that his race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting him." Karki v. Holder, 715 F.3d 792, 800 (10th

Cir. 2013). "[T]he protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." Id. at 800-01. To secure withholding of removal, an applicant must show a "clear probability of persecution on account of one of the statutorily protected grounds. Applicants who cannot establish a well-founded fear under asylum standards will necessarily fail to meet the higher burden of proof required for [restriction on] removal." Id. at 801 (citations omitted).

"In this circuit . . . whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." Witjaksono v. Holder, 573 F.3d 968, 977 (10th Cir. 2009). We review the BIA's factual findings for substantial evidence.[3] Witjaksono, 573 F.3d at 977. Under the substantial evidence standard, the agency's "factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. "To reverse the BIA finding, we must find that the evidence not only supports [the opposite] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

---

[3] "While we review the BIA's decision, not the IJ's, we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." Karki, 715 F.3d at 800.

We determine that there was substantial evidence in the record to support the BIA's finding that Lysak's political opinion was not a central reason for his mistreatment. In Lysak's affidavit, he does not mention any ideological opposition to corruption, or any refusal to pay bribes due to such ideology. Instead, his affidavit states that he initially paid the police in order to avoid problems, and that after his business's competition increased and income decreased, he reduced his payments so that he and his business partners "could have at least [enough] income . . . to sustain [them]selves." Moreover, far from being concerned with the political ramifications of corruption, his affidavit states that he and his business partners were sometimes "so busy that [sic] often forgot about existence of" the bribes. Finally, when the police demanded $30,000, he sought to avoid paying because he "knew that it would be impossible to collect $30,000." The affidavit repeatedly references Lysak's financial concerns, and never references his political opposition to corruption. The affidavit thus provides substantial evidence that Lysak refused to pay bribes out of financial necessity, not because of his political opinions.

Weighing against the affidavit is Lysak's testimony before the IJ. In his testimony, he insisted that he refused to pay due to both financial necessity and because he was "against the corruption system" and "considered the government should protect its own citizens." But the IJ permissibly determined that Lysak was "given to some embellishment" in his testimony. See 8 U.S.C. § 1229a(c)(4)(C) (IJ may make credibility determination). Even if the IJ had afforded his testimony full weight, however, the inconsistencies between his oral statements and his affidavit are

4

such that his testimony does not compel the conclusion that he was motivated to resist the bribes due to his political opinion.

Further, even if Lysak had shown he refused to pay due to a political opinion opposed to corruption, he nevertheless fails to show that the police were or are motivated to persecute him due to that opinion. The principal evidence in the record regarding police motivation is, again, Lysak's testimony. And again, the IJ permissibly made a credibility determination, see id., by describing that it would "not accept [Lysak's] testimony [characterizing the motivations of others] without closer analysis." We conclude that his testimony does not compel the conclusion that the police were motivated by Lysak's political opinions, particularly because his affidavit provides substantial evidence that the police were motivated by money alone.

Lysak also argues that the BIA impermissibly overlooked a letter from Lysak's parents describing police motivations. Karki, 715 F.3d at 800 (BIA may not "simply overlook evidence in the record that supports the applicant's case"). But Lysak filed the letter more than three weeks after the evidentiary deadline. Because the letter was untimely, the IJ permissibly afforded the letter "diminished weight." Immigration Court Practice Manual § 3.1(d)(ii) ("[I]f an exhibit is untimely, it is not entered into evidence or it is given less weight."); see also Kaitov v. Holder, 483 F. App'x 476, 482 (10th Cir. 2012) (unpublished) (IJ may determine how to treat an untimely filing). Because the agency was permitted to disregard the letter or afford it less weight, the letter does not compel reversal.

5

Moreover, even if afforded full weight, the letter does not compel the conclusion that one central motivation for Lyak's persecution was to target his anti-corruption ideology. <u>Karki</u>, 715 F.3d at 800-01. Lysak principally relies on the letter's description of police statements to his parents that "we will show [Lysak] how to stand up to government, we [sic] going to make example of him." This statement is ambiguous. Although it could suggest that the police were motivated by Lysak's "stand" in expressing his political opinion, it could also suggest that they were motivated by his "stand" in failing to pay the demanded bribes. And, though the letter's statement that the police threatened retaliation if Lysak's parents "keep expressing [their] opinions" suggests the police may be motivated to suppress ideas, that statement is directed at Lysak's parents, not at Lysak. <u>See</u> <u>In re Y-T-L</u>, 23 I. & N. Dec. 601, 619 (BIA 2003) ("[P]ersecution must be personal to the applicant . . . ."). Moreover, the police never demanded bribes or physically harmed Lysak's parents for their beliefs. That the police did not persecute Lysak's parents for expressing anti-corruption opinions suggests that the police were centrally interested in bribes, not in expressions of opposition to corruption. Thus, we conclude that the letter does not overcome the substantial evidence supporting the BIA's findings, as it must in order for us to grant relief.[4]

---

[4] Lysak alternatively alleges that he was targeted due to his membership in the social group "males between the ages 18 and 55 who open a private business and were opposed to paying government bribes." Because we conclude that substantial evidence supported the BIA's finding that Lysak was targeted for purely financial

6

## III

Lysak also seeks relief under the CAT. Under the CAT, Lysak need not show that torture will occur on account of a statutorily protected ground. Ritonga v. Holder, 633 F.3d 971, 978 (10th Cir. 2011). He must only demonstrate that "it is more likely than not that he . . . would be tortured" upon removal to Ukraine. Id. However, under the CAT "a petitioner is not entitled to a presumption of future torture based on evidence of past torture; nor does a showing of past torture automatically render [him] CAT eligible." Niang v. Gonzales, 422 F.3d 1187, 1202 (10th Cir. 2005) (citation omitted).

The IJ concluded that Lysak failed to show a high probability of future torture because he could conceivably change employment in order to avoid future extortion or police beatings. The BIA affirmed this rationale, and further reasoned that Lysak's reliance on country condition information was "generalized evidence of violence and crime not particular to him" which is insufficient to demonstrate that it is more likely than not he will be tortured in the future. We note that Lysak did not challenge the latter rationale until his reply brief. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). Nevertheless, we hold that there is substantial evidence in the record to support the BIA's conclusion. In particular, despite generalized police corruption in Ukraine, one of Lysak's business partners—who was also extorted and

---

reasons, we do not reach the question of whether this social group is cognizable nor whether Lysak was a member of this group.

7

beaten by police, and whose parents have been threatened by police—has resided continuously in Ukraine without being tortured.  Because Lysak has failed to provide evidence of a particularized risk of future torture, we do not address his argument that the BIA cannot require him to change employment in order to avoid torture.

## IV

The petition for review is **DENIED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

8