FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BUDIYANTO JUNED,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 10-9582
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior Circuit
Judges.

---

Budiyanto Juned, a native and citizen of Indonesia, petitions for review of

the Board of Immigration Appeals' (BIA) decision affirming the immigration

judge's (IJ) denial of Mr. Juned's applications for asylum, restriction on removal,

and relief under the Convention Against Torture (CAT). We have jurisdiction to

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

consider the petition under 8 U.S.C. § 1252(a). For the following reasons, we dismiss in part and deny in part the petition for review.

## I. Procedural Background

Mr. Juned came to the United States on a visitor's visa in 1994. He remained after his visa expired. In 2003, he was placed in removal proceedings for staying in the United States past the expiration of his visitor's visa without authorization. He conceded the charge of removability. In 2005, he filed an application for asylum, restriction on removal and relief under the CAT.

Mr. Juned had a hearing before an IJ on his application. After the hearing, the IJ denied all of Mr. Juned's requests for relief. Mr. Juned appealed to the BIA. The BIA affirmed the IJ's decision. Mr. Juned now petitions for review of the BIA's decision.

## II. Factual Background

Mr. Juned sought asylum and restriction on removal on the basis of his political opinion. In support of his claim, Mr. Juned relied on three events. He testified that he was raised by his grandparents and that when he was twelve years old his grandfather was placed in detention for about two years. Although his grandfather did not tell him why he was incarcerated, he warned Mr. Juned not to "get involved in participating in organization[s]." Admin. R. at 121. From this, Mr. Juned speculated that his grandfather's detention was due to his grandfather's involvement "with a group . . . call[ed] Golongan Karya." *Id*. at 111.

-2-

Despite his grandfather's warning, Mr. Juned became a member of the Pancasila Youth Party, also known as the PPP. In 1992, at one of the PPP rallies, Mr. Juned and his friends got into a heated altercation with some men from an opposing party. Mr. Juned testified that following the rally, his friends who had attended the rally fled Indonesia because they did not feel it was safe to remain in their village.

The third incident occurred when Mr. Juned and some of his friends were at a bus station a few weeks after the 1992 rally. He testified that he and his friends were suddenly attacked by a group of people. He was punched and knocked to the ground by a man who wore a yellow shirt signifying his membership in the Golkar party, which is the majority member of the ruling coalition in Indonesia. Mr. Juned believes that he was targeted for harm because he was wearing a blue or green shirt demonstrating his support for the PPP, which is a perceived adversary to the Golkar party. He did not report the incident to the police and he treated his injuries with herbal remedies from his grandparents. After this incident, he left Indonesia and traveled to the United States on a visitor's visa. Since his departure, his grandparents have passed away, but his parents and stepsister still live in Indonesia.

## III. Analysis

The BIA affirmed the IJ's decision in a single-member brief order.
*See* Admin. R. at 2-5; 8 C.F.R. § 1003.1(e)(5). In these circumstances, the BIA's decision is the final order under review. *See Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011). "We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotation omitted). "In this circuit, the determination whether an alien has demonstrated persecution is a question of fact . . . ." *Ritonga*, 633 F.3d at 974 (quotation omitted).

### A. Asylum

The BIA affirmed the IJ's determination that Mr. Juned was not eligible for asylum because his application was not filed within the one-year deadline and he did not demonstrate changed or extraordinary circumstances to except himself from the filing deadline. Mr. Juned asserts that he is eligible for the exception to the one-year filing deadline for asylum applications because the evidence he presented does show extraordinary and changed circumstances. We lack jurisdiction to review this challenge to the BIA's decision.

The Immigration and Nationality Act provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" related to the

timeliness of an asylum application.  8 U.S.C. § 1158(a)(3).  There are two

exceptions to this jurisdictional bar for constitutional questions and questions of

law, *see* 8 U.S.C. § 1252(a)(2)(D), but neither of those exceptions are implicated

in this case.  Mr. Juned's challenge is "directed solely at the agency's

discretionary and factual determinations" and "remain[s] outside of the scope of

judicial review." *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006)

(quotation omitted).  Accordingly, we dismiss this portion of Mr. Juned's petition

for lack of jurisdiction.

### B.  Restriction on Removal

In order to be eligible for restriction on removal, Mr. Juned must show

that he suffered past persecution or that it is more likely than not that he will

be subject to persecution if he returns to Indonesia.  8 C.F.R. § 1208.16(b)(1), (2).

"Persecution is the infliction of suffering or harm upon those who differ (in race,

religion, or political opinion) in a way regarded as offensive and must entail more

than just restrictions or threats to life and liberty." *Ritonga*, 633 F.3d at 975

(quotation omitted).

The BIA determined that the incidents of mistreatment Mr. Juned described

did not amount to persecution.  The BIA further determined that the evidence did

not demonstrate that Mr. Juned would be subject to persecution in the future.

As the BIA explained, "[i]t has been more than 16 years since [Mr. Juned] left

Indonesia.  There is no proof that anyone in Indonesia seeks to harm [Mr. Juned]

today.  Further, we take note that [Mr. Juned's] parents and stepsister continue to reside in Indonesia.  There is no indication that any harm has befallen them."  Admin. R. at 4.

### 1. *Past Persecution*

Mr. Juned argues that the cumulative effect of "the two threatening incidents against [him], once at a political rally and once at a bus stop, combined with the suffering he endured when his grandfather and caretaker was imprisoned," constitute past persecution on account of his political opinion and family ties.  Pet'r Br. at 18.  After reviewing the record, we conclude the BIA's determination that Mr. Juned failed to establish past persecution is supported by substantial evidence.

With respect to the political rally incident, Mr. Juned stated in his declaration that "violence erupted" during a political rally that he was attending and five people from his village were hospitalized.  Admin. R. at 464.  He stated that he felt "unsafe" in the village after that time, *id.*, but he did not suffer any injuries at the rally nor did he present any evidence that he was individually targeted.  While the violence may have caused Mr. Juned to feel unsafe or afraid, fear alone is not a basis for a finding of persecution.  *See Ritonga*, 633 F.3d at 976 (acknowledging that alien's exposure to the 1998 riots in Indonesia and a church bombing, while "frightening," did not compel a finding of past persecution where she was not "individually targeted or physically harmed in [the] events");

-6-

*Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (concluding that alien's descriptions of the 1998 Jakarta riots and a church burning did not mandate relief where he did "not suggest that he was individually targeted or physically harmed").

In the bus stop incident, Mr. Juned testified that he was punched by someone wearing a shirt signifying support for Golkar. He was able to return home and was treated by his grandparents with an herbal remedy. He did not seek further medical treatment. This was the only incident involving any physical harm to him. In the *Ritonga* and *Witjaksono* cases, both of those petitioners, like Mr. Juned, suffered minor injuries from a "lone occasion" when they were physically harmed and we concluded that those circumstances did not constitute persecution. *Ritonga*, 633 F.3d at 976; *Witjaksono*, 573 F.3d at 977. The similar facts here require the same conclusion.

Finally, we consider the detention of Mr. Juned's grandfather. At the time of his grandfather's detention, Mr. Juned did not know that his grandfather was in jail. He testified that he learned of the detention from his grandfather when he was an adult. Moreover, his grandfather did not specifically tell Mr. Juned why he was placed in jail, simply telling Mr. Juned "don't get involved in participating in organization[s]." Admin. R. at 121. Although the IJ and BIA assumed Mr. Juned's credibility, he provided very limited evidence relating to his grandfather's detention, the reasons for the detention, the conditions of the

detention, and its impact on him at the time. We conclude that the detention of Mr. Juned's grandfather does not compel a finding that Mr. Juned was persecuted.

Even considering all of Mr. Juned's incidents cumulatively, we cannot say that a reasonable adjudicator would be compelled to conclude that Mr. Juned suffered persecution, given our prior decisions in analogous circumstances. *See Ritonga*, 633 F.3d at 976, *Witjaksono,* 573 F.3d at 977.

2. *Fear of Future Persecution*

Mr. Juned asserts that he has a well-founded "fear of persecution in Indonesia by both government officials and civilian political adversaries who seek to harm him because of his political opinion." Pet'r Br. at 19. But he offers no record citations to support this broad statement. *See id.* As the BIA noted, it has been more than sixteen years since Mr. Juned left Indonesia. He has failed to offer any rebuttal to the BIA's determination that there is "no proof that anyone in Indonesia seeks to harm [Mr. Juned] today," Admin. R. at 4. He claims that his "family has been identified as opponents by the Indonesian government," Pet'r Br. at 21, but he testified that his parents and stepsister currently reside unharmed in Indonesia. Mr. Juned also misplaces the burden of proof, arguing that "[e]ven though time has passed since [he] fled Indonesia, the government did not submit any evidence to demonstrate that the situation has changed in Indonesia to the extent that [he] could return to Indonesia without fear of harm."

*Id.* Because the BIA determined that Mr. Juned did not demonstrate past persecution, it was his burden to demonstrate a clear probability of future persecution, not the government's burden to demonstrate a change in country conditions. *See Witjaksono*, 573 F.3d at 977 ("Without a showing of past persecution, an alien must demonstrate that it is more likely than not that he will be individually persecuted in the future."). Mr. Juned has failed to demonstrate that the record compels the conclusion that he would more likely than not suffer persecution in Indonesia because of his political opinion. Accordingly, we affirm the BIA's determination that Mr. Juned is not eligible for restriction on removal.

## C. Relief under CAT

To receive the protections of the CAT, an applicant must demonstrate "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The torture must be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

The BIA affirmed the IJ's determination that Mr. Juned "failed to demonstrate that it is more likely than not that he would be tortured if returned to Indonesia." Admin. R. at 4. Mr. Juned provided no evidence that his risks of persecution and torture differ. Instead, he relied on the same incidents to support his asylum, restriction on removal, and CAT claims. Since we affirmed the BIA's finding that it is unlikely that Mr. Juned would face future persecution if returned

to Indonesia, "it is likewise against the odds that he would be tortured by the government or a proxy for the government." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125-26 (10th Cir. 2007); *see also Ritonga*, 633 F.3d at 979. Accordingly, we affirm the BIA's denial of relief under the CAT.

### IV.  Conclusion

We DISMISS for lack of jurisdiction Mr. Juned's challenge to the BIA's asylum determination. We DENY the remainder of the petition for review.

Entered for the Court


William J. Holloway, Jr.
Senior Circuit Judge

-10-