**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ARTAK AVETISYAN,

　　　　Petitioner,

v.

ALBERTO R. GONZALES, United
States Attorney General,

　　　　Respondent.

No. 06-9596
(No. A75-578-489)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge and
**TYMKOVICH**, Circuit Judge.

---

　　　Artak Avetisyan, a citizen of Armenia, petitions for review of an order of

the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ)

---

\*　　　After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denial of his application for asylum and withholding of removal.[1]  We have

jurisdiction to review the agency's decision under 8 U.S.C. § 1252(a)(1), and we

deny the petition for review.

## Background

Mr. Avetisyan sought asylum for persecution on the basis of his political

opinion.  He testified at his hearing before the IJ that his political activity mainly

started in 1996 with the beginning of the presidential elections.  He supported the

candidate for the opposition party, Vasgen Manoukian.  He explained that he and

his friends were very active during the presidential election race and that they

would distribute fliers containing information about Manoukian's platform.

Mr. Avetisyan was also responsible for organizing a pre-election rally.  He

received permission from the city government to hold the rally, but just before the

rally was to begin, the police department arrived with documents showing that a

gathering at that particular location was prohibited.  The people who had gathered

for the rally became upset, and more police officers arrived to try to control the

crowd.  Mr. Avetisyan was arrested and held for about six to eight hours.  When

he was released, he was warned that in the future if he was going to organize a

---

[1]     The IJ also denied relief under the Convention Against Torture, but
Mr. Avetisyan did not challenge that ruling before the BIA.  It is not clear from
Mr. Avetisyan's opening brief whether he is challenging that ruling on appeal.
Regardless, we lack jurisdiction to review a claim that was not raised before the
BIA. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 (10th Cir. 1999) (per curiam).

similar event he would need permission from both the city government and the police department.

The next week, Mr. Avetisyan was preparing to hold another rally. Although he had permission from the city government and the police, an official representative from the state security committee arrived and would not allow the rally to continue. During the elections, Mr. Avetisyan acted as a representative for Manoukian and was responsible for overseeing the paper ballot process in his district. He testified that there were irregularities during the election process and that, even though Manoukian obviously had the majority, Levon Tepetrucian, a member of the incumbent party, was announced as the winner. After the election, Mr. Avetisyan testified that he was arrested and that some of his friends who were supporters of Manoukian were also arrested. He was detained for about two weeks from his arrest on September 24 until October 9, 1996. He was released on the condition that he not leave the country until his case was transferred to a prosecutor and then to the court. He was charged with organizing impolite and unlawful political activities. After he was released, he went to the United States Embassy and applied for a visa. He arrived in the United States on May 21, 1997.

Mr. Avetisyan testified that, while he was in the United States, his father was twice summoned to the police station to give evidence about him. The second time his father was detained for three days. A few days after his father was released from custody, he suffered a heart attack and died. Mr. Avetisyan

testified that he does not want to return to Armenia because he believes he will be arrested immediately.

Mr. Avetisyan overstayed his visa and applied for asylum relief on May 4, 1998. He was served with a Notice to Appear in removal proceedings on June 11. On December 15, he appeared and conceded the charges in the Notice to Appear. He requested a continuance on the merits hearing so that he could obtain additional documents from Armenia. At the next hearing on February 2, 2000, Mr. Avetisyan requested a continuance for medical reasons. The hearing was set for April 18, 2002, and Mr. Avetisyan again sought a continuance in order to obtain supplemental documentation. A brief hearing was held on May 28, 2003, but the location of the hearing had changed from Los Angeles to Denver and a new merits hearing was set for September 2, 2004. That hearing was also continued because Mr. Avetisyan had failed to obtain an updated set of fingerprints to submit to the IJ. The merits hearing was ultimately held on May 26, 2005.

The IJ denied Mr. Avetisyan's request for asylum. The IJ also denied Mr. Avetisyan relief in the form of withholding of removal under the Immigration and Nationality Act (INA) and under the Convention Against Torture (CAT). As mentioned above, on appeal to the BIA, Mr. Avetisyan did not challenge the IJ's determination that he was not eligible for CAT relief. The BIA affirmed the IJ's decision that Mr. Avetisyan had not established his entitlement to asylum relief or

withholding of removal under the INA.  Mr. Avetisyan filed a petition for review of the BIA's decision.

## Standard of Review

"We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard."  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).  "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (quotation omitted).

In order to be eligible for the discretionary relief of asylum, a petitioner must show that he suffered past persecution or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 C.F.R. § 1208.13.  In order to be eligible for withholding of removal under the INA, a petitioner must show that he suffered past persecution or that it is more likely than not that he would be subject to persecution if he returns to his native country.  *Id.* § 1208.16(b)(1)(i), (iii).

## Discussion

The IJ determined that Mr. Avetisyan's testimony was not credible.  The BIA concluded that the IJ had erred in this determination because the IJ had impermissibly predicated his adverse credibility finding on the lack of corroborative evidence in the record, and not on any identifiable inconsistencies, omissions, or cogent reasons for his disbelief of Mr. Avetisyan's testimony.  The

BIA determined, however, that the IJ was correct in his conclusion that Mr. Avetisyan had failed to meet his burden of proof for asylum and that, as a result, Mr. Avetisyan had failed to meet the higher burden of proof for withholding of removal.

The BIA noted that, in certain circumstances, testimony alone may be sufficient to meet the requisite burden of proof for asylum, but that, where it is reasonable to expect corroborating evidence for certain facts, such evidence should be provided or an explanation should be given as to why such evidence was not provided. The BIA concluded that:

> In this case, the Immigration Judge reasonably determined that absent, at a minimum, supporting letters attesting to the respondent's alleged membership or even involvement in any political movement, especially considering the many years the respondent had to prepare his case, and the lack of any reasonable explanation for not providing such evidence, the respondent failed to meet his burden for asylum.

Admin. R. at 3.

Mr. Avetisyan first argues that the BIA erred in making this determination because the BIA did not follow the precedent established in *In re S-M-J-*, 21 I. & N. Dec. 722 (BIA 1997). As he explains:

> *S-M-J-* does demand that an applicant should provide "supporting evidence, both of general conditions and of the specific facts sought to be relied on by the applicant, where such evidence is available." *S-M-J-* also demands that if such evidence is unavailable, "the applicant is required to provide an explanation of why it is unavailable, **and**, the **IJ must ensure** that the applicant's explanation **is included** in the record."

Pet. Br. at 10 (citation omitted and quoting *In re S-M-J-*, 21 I. & N. Dec. at 724).

Relying on this passage, Mr. Avetisyan asserts that the BIA erred because the IJ

failed to give Mr. Avetisyan the opportunity to explain why he did not have

corroborating documents. *In re S-M-J-* does not support his position. As the

passage cited above indicates, the burden is on the petitioner to provide an

explanation. *See also In re S-M-J-*, 21 I. & N. Dec. at 725 ("If the applicant does

not provide such information, an explanation should be given as to why such

information was not presented."). *In re S-M-J-* does not stand for the proposition

that an IJ must provide an opportunity for petitioner to offer such an explanation.

The only requirement is that the IJ "ensure that the [] explanation is included in

the record" if the petitioner provides one. *Id.* at 724.

Moreover, the record reflects that the IJ did give Mr. Avetisyan an

opportunity to offer an explanation. At the close of the hearing, after the IJ had

issued its decision in which he noted the lack of corroborating evidence, he said

to Mr. Avetisyan's counsel, "Counsel, is there anything else you want to put on

the record . . . I'll let you do it. Say whatever you want." Admin. R. at 160. At

that point, Mr. Avetisyan's counsel began commenting on a portion of the IJ's

decision in which the IJ discussed the credibility concerns expressed by the initial

asylum interviewer. Mr. Avetisyan failed to offer any explanation about the lack

of documentary evidence even after the IJ again pointed out that he had denied

the application in large part because of the lack of such evidence. *See id.* at 161.

Next, Mr. Avetisyan asserts that the BIA erred by "blindly subscribing to the IJ's demand for corroborating evidence." Pet. Br. at 10. Mr. Avetisyan asserts that the IJ erred in finding that Mr. Avetisyan was a member of a political party and that he should have produced evidence of his party membership. He defeats his own argument, however, by conceding on the next page that the IJ did not require him to show actual proof of party membership. He provides the following passage from the IJ's decision, "Why cannot we get a letter from somebody that is in this particular movement or this particular party? They do not have to say he is a member, but they could say, hey, he was involved in this, he was making fliers, he was organizing groups." *Id*. at 11 (quoting Admin. R. at 52). The BIA's decision tracks this passage as it notes that petitioner could have submitted letters attesting to his "alleged membership or . . . involvement in any political movement." Admin. R. at 3.

Mr. Avetisyan also takes issue with the fact that the IJ mentioned the length of time that Mr. Avetisyan's application had been pending in the United States as a reason why the IJ expected to see more documents. The BIA also mentions this as part of its affirmance of the IJ's decision. Mr. Avetisyan asserts that the IJ did not allow any discussion to assess whether it would be reasonable to obtain such documents under Mr. Avetisyan's country conditions. As explained above, the IJ gave Mr. Avetisyan ample opportunity to offer any explanation for the lack of corroborating evidence. Moreover, the record reflects Mr. Avetisyan's hearing

was continued several times at the request of his attorney for the alleged purpose of obtaining additional documents from Armenia. *See id.* at 82, 91-92, 95, 101. From the time of the filing of his initial application until his merits hearing, Mr. Avetisyan had seven years to obtain documents. Given these circumstances, it was reasonable for the IJ to consider the amount of time that the application had been pending in reaching his determination regarding corroborating evidence.

Finally, Mr. Avetisyan argues that "to expect, as the IJ does, that a presidential candidate would know [Mr. Avetisyan] and be willing to write him a letter does not seem reasonable." Pet. Br. at 13. Although the IJ did mention that perhaps Mr. Avetisyan could get a letter from Manoukian, this was mentioned after the IJ began the discussion with "[w]hy cannot we get a letter from somebody that is in this particular movement or this particular party?" Admin. R. at 52. The IJ did not specify in this passage that the letter had to come from Manoukian. The record reflects that Mr. Avetisyan had friends who participated in the political activities with him. *See*, *e.g.*, *id.* at 137, 145. There is no explanation as to why these friends, or someone else in the organization, could not provide a letter describing Mr. Avetisyan's involvement in this political movement.

Because we conclude that the BIA did not commit legal error and that substantial evidence supports the BIA's decision, the petition for review is DENIED.

Entered for the Court


Wade Brorby
Senior Circuit Judge