**ZHE SUN, Petitioner,**

v.

**Eric H. HOLDER, Jr., United States Attorney General, Respondent.**

No. 14–9505.

United States Court of Appeals, Tenth Circuit.

April 20, 2015.

Jack Wei Chao, Tustin, CA, for Petitioner.

Monica Antoun, General Counsel, Charles S. Greene, United States Department Of Justice Office Of Immigration Litigation, Washington, DC, DOH/EOIR/BIA, Attn: Certification Unit, Falls Church, VA, John Longshore, Director, DHS Immigration and Customs Enforcement, Centennial, CO, for Respondent.

Before McHUGH, PORFILIO, and O'BRIEN, Circuit Judges.

## ORDER AND JUDGMENT *

TERRENCE L. O'BRIEN, Circuit Judge.

Zhe Sun, a native and citizen of China, petitions for review of the denial of his application for asylum, restriction on removal, and relief under the United Nations Convention Against Torture (CAT). Exercising jurisdiction under 8 U.S.C. § 1252(a) over those arguments Sun has administratively exhausted, we deny the petition.

## I. BACKGROUND

In July 2007, Sun was arrested in China, along with his father and uncle, while attending an unregistered, Christian "house church." He was detained for three days, interrogated for thirty minutes about the church and its leader, slapped on the face, and kicked in the chest. He did not suffer any physical injuries. Upon his release, he was ordered to report to a village committee every two weeks, which he did three times. He was also made subject to random home surveillance and threatened with re-arrest, sentence, and imprisonment if he ever attended a house church again. His father paid a special penalty on Sun's behalf.

In September 2007, Sun entered the United States on a student visa and studied at various colleges until January 2011. Shortly thereafter, he applied for asylum, restriction on removal, and CAT relief. In a supporting statement, Sun referenced the 2007 incident and stated his father had been arrested again in January 2011 while holding a house church. At a hearing in August 2011, an immigration judge (IJ) required corroboration of the father's arrest for purposes of the REAL ID Act of 2005.[1] The relevant portion of it addresses an applicant's testimony, which "may be sufficient to sustain the applicant's burden [to show he is a refugee] without corroboration," but "[w]here the trier of fact determines that the [asylum] applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii).

At his individual hearing in December 2012, Sun testified about his 2007 arrest.

* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

1. The REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231 (2005), applies in full to Sun's case because he filed his asylum application after the Act's effective date of May 11, 2005. See Maatougui v. Holder, 738 F.3d 1230, 1238 (10th Cir.2013).

He also produced a letter from his father dated November 2007. In it his father warned Sun not to return to China because the police had been inquiring when he would return and admit his crime, and they would probably arrest him if he returned. Sun also provided a receipt for the special penalty his father had paid on his behalf and an affidavit from his uncle, dated June 2011, stating Chinese police were still looking for Sun and would arrest him because he violated the terms of his release by leaving China.

Sun also testified about his father's 2011 arrest, which he learned of during one of their regular telephone conversations (every three or four days), but he provided little detail other than to say he thought his father lost his job as a result. According to that line of testimony the police told his father Sun needed to return to China and accused Sun of "illegal communication with foreign churches," R. at 166. When asked why he did not have any corroboration of his father's 2011 arrest, Sun responded only "why[ ] should I ask him to write a letter?" *Id.* at 149. But he added he could get a letter "[i]f it's necessary." *Id.* at 151. Sun added that his father and uncle continued to attend Christian house churches in China. He also claimed if he returned to China, he would be immediately arrested at the airport, and he would not be able to move to another part of China to avoid problems with the government. He added he would not attend a registered Christian church because they are regulated by the Chinese government and are not free.

The IJ denied relief. She found serious problems with Sun's credibility and the lack of explanation for his failure to provide certain corroborating evidence, including a letter from his father regarding his father's 2011 arrest. The IJ was also concerned with his ignorance of the details of that arrest and questioned why his uncle did not mention it in his affidavit, which was dated some five months after that arrest.

The IJ also found irregularities with other documentary evidence Sun provided to corroborate his testimony. Sun initially testified his father's 2007 letter was sent in an envelope postmarked April 25, 2012, and addressed to a friend in Utah. He claimed his friend offered to receive the correspondence because Sun was in the process of moving from California to Utah. But when pressed, Sun admitted he had already moved to Utah by that date, a receipt for the special penalty his father had paid had actually come in that envelope, and he did not have the envelope his father's letter came in. He also did not have the envelope his uncle's affidavit came in. The IJ asked Sun why he had waited until his individual hearing in 2012 to submit his father's 2007 letter rather than include it with his asylum application. Sun claimed he had only found the letter after he moved from California to Utah in 2011. The IJ also expressed concern about Sun's ability to exit China through the Beijing airport without getting arrested if, in fact, he was under a reporting requirement, but Sun explained the Chinese government did not become concerned about him until they found out he left China; before that, he was only reporting to the village committee.[2]

As a result, the IJ appeared to find Sun not credible, stating, in connection with her denial of restriction on removal:

---

**2.** The IJ also discussed a variety of problems with other corroborating evidence Sun provided, mostly relating to his 2007 arrest and the genuineness of his Christian affiliation.

Sun takes issue with the IJ's findings as to many of those problems, but we need not discuss them because they are irrelevant to our disposition.

"[T]he irregularities with respect to the respondent's documentary evidence and the lack of specificity in his testimony have led me to make a negative credibility finding." *Id.* at 90.

Significantly, the IJ concluded Sun's arrest, brief detention, and mistreatment by the police in 2007 was not sufficiently severe to rise to the level of persecution. As to future persecution, the IJ found his testimony regarding alleged continued police interest in him to be vague, lacking in detail, and insufficiently corroborated. She also pointed to Sun's testimony about his father and uncle continuing to attend house churches even though they are occasionally harassed. She also looked to the 2007 U.S. Department of State (DOS) country report, which indicated a certain tolerance for Christian house churches if they were kept small and unobtrusive, and a DOS *religious-freedom report* from 2011, which showed continued religious tolerance (there were 200 Christian Bookstores and nine Christian publishers in China). Finally, the IJ determined Sun had not shown the threat of persecution exists nationwide. Accordingly, the IJ denied Sun's asylum application.

For similar reasons, the IJ denied Sun's request for restriction on removal. She denied CAT relief because Sun had failed to show he was more likely than not to be tortured if he returned to China.

The Board of Immigration Appeals (BIA) concluded the IJ did not make an explicit credibility finding and therefore considered Sun fully credible under 8 U.S.C. § 1229a(c)(4)(C).[3] Nevertheless, it agreed with the IJ, in general terms, concluding that Sun failed to provide sufficient corroborating evidence to meet his burden of proof on his claims for asylum and restriction on removal. Moreover, it decided Sun's arrest did not rise to the level of persecution. It also affirmed the IJ's decision with respect to future persecution. As did the IJ, it relied on the country report, the religious-freedom report, and insufficient corroboration of Sun's testimony; it specifically noted Sun's failure to corroborate his father's 2011 arrest. It also denied restriction on removal and CAT relief.

## II. DISCUSSION

A single BIA member entered a brief order under 8 C.F.R. § 1003.1(e)(5) affirming the IJ's decision. We therefore review the BIA's decision as the final order of removal. *Uanreroro v. Gonzales,* 443 F.3d 1197, 1204 (10th Cir.2006). Consequently, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Id.* But we "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales,* 474 F.3d 783, 790 (10th Cir.2007). And "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro,* 443 F.3d at 1204.

We review any questions of law de novo, and determine whether substantial evidence supports the agency's findings of fact. *Ritonga v. Holder,* 633 F.3d 971, 974 (10th Cir.2011). "[W]hether an alien has demonstrated persecution is a question of fact." *Id.* "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro,* 443 F.3d at 1204 (alteration

---

**3.** In relevant part, § 1229a(c)(4)(C) states that "if no adverse credibility determination is explicitly made [by the IJ], the applicant or witness shall have a rebuttable presumption of credibility on appeal."

and internal quotation marks omitted). "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr,* 474 F.3d at 788–89 (internal quotation marks omitted); *see* 8 U.S.C. § 1252(b)(4)(B). Hence, we do not reweigh evidence. *Sidabutar v. Gonzales,* 503 F.3d 1116, 1125 (10th Cir.2007).

Before turning to Sun's asylum claim, we note his challenge to the IJ's adverse credibility finding. But he overlooks the BIA's decision, which "deemed" his testimony "credible" and gave it "full weight" because, in its view, the IJ did not make an explicit credibility finding. R. at 2–3. Because we are limited to the grounds stated by the BIA, *see Uanreroro,* 443 F.3d at 1204, Sun's arguments about the IJ's statements regarding Sun's credibility are irrelevant.

"To be eligible for asylum, an applicant must be a 'refugee' within the meaning of ... 8 U.S.C. § 1101(a)(42)." *Pang v. Holder,* 665 F.3d 1226, 1230 (10th Cir. 2012). A "refugee" is a person "unable or unwilling to return to ... [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "The applicant bears the burden of proof of establishing eligibility for asylum." *Pang,* 665 F.3d at 1230.

The government posits that even though the BIA deemed Sun's testimony credible and afforded it "full weight," his failure to meet his burden of proof by not providing reasonably available corroborating evi-

dence is an independent basis for denying his petition for review. To be sure, § 1158(b)(1)(B)(ii) appears to contemplate this, and many of our sister circuits have expressly or implicitly adopted or approved such a rule (or some variation on it) in published opinions. *See, e.g., Moreno v. Holder,* 749 F.3d 40, 44 (1st Cir.2014); *Yang v. Holder,* 664 F.3d 580, 584–87 (5th Cir.2011); *Chen v. Holder,* 658 F.3d 246, 251–54 (2d Cir.2011); *Raghunathan v. Holder,* 604 F.3d 371, 379–81 (7th Cir. 2010); *Marynenka v. Holder,* 592 F.3d 594, 600–02 (4th Cir.2010); *Aden v. Holder,* 589 F.3d 1040, 1044–45 (9th Cir.2009); *Lin v. Holder,* 565 F.3d 971, 975–77 (6th Cir.2009); *El–Sheikh v. Ashcroft,* 388 F.3d 643, 646–47 (8th Cir.2004); *Abdulai v. Ashcroft,* 239 F.3d 542, 550–54 (3d Cir. 2001).[4] And we have suggested such a rule in unpublished decisions applying pre-REAL ID Act law. *See Kaitov v. Holder,* 483 Fed.Appx. 476, 481–82 (10th Cir.2012); *Avetisyan v. Gonzales,* 245 Fed.Appx. 803, 805–07 (10th Cir.2007); *Lukarov v. Gonzales,* 159 Fed.Appx. 24, 28–29 (10th Cir. 2005). We would extend our approval of the rule, but the BIA provided an alternate basis for its decision, making our decision easier.

We begin with the BIA's determination that Sun's arrest, detention, and mistreatment were not severe enough to constitute persecution. No reasonable adjudicator would be compelled to conclude to the contrary. "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, [nationality; membership in a particular social group,] or political opinion) in a way regarded as offensive, and requires more than just re-

---

**4.** The REAL ID Act's corroboration provision was not applicable in some of the cases just cited. Where it was not, the courts applied the corroboration analysis set out in *In re S–M–J–,* 21 I. & N. Dec. 722 (BIA 1997). But

that analysis was essentially codified in § 1158(b)(1)(B)(ii). *See Dong v. Attorney Gen. of U.S.,* 638 F.3d 223, 229 n. 3 (3d Cir.2011); *Rapheal v. Mukasey,* 533 F.3d 521, 527 (7th Cir.2008).

strictions [on] or threats to life and liberty." *Witjaksono v. Holder*, 573 F.3d 968, 976 (10th Cir.2009) (internal quotation marks omitted); *see also* 8 U.S.C. § 1101(a)(42) (including nationality and membership in a particular social group among the protected grounds). Sun was detained for three days, mistreated without physical injury, threatened, and monitored upon his release. That treatment was not sufficiently severe to compel the conclusion Sun was persecuted. *Compare Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir.1991) (past persecution not demonstrated where asylum applicant was twice detained for two-day periods during which he was beaten and interrogated, whose parents' home had been searched, whose work locker had been repeatedly broken into, and who had been assigned poor work tasks, denied bonuses, and conscripted into the army, where he was constantly harassed), *with Nazaraghaie v. INS*, 102 F.3d 460, 463–64 (10th Cir.1996) (suggesting that asylum applicant's severe beating and ten-month imprisonment on account of his political opinion constituted persecution). We reject Sun's argument that being forced to forgo his religious practice of attending house churches constitutes persecution per se. This argument presumes future persecution and is therefore not germane to a past-persecution analysis. Moreover, the one-time incident to which Sun was subjected is more akin to religious discrimination than persecution. *Ba v. Mukasey*, 539 F.3d 1265, 1270 (10th Cir.2008) (though morally reprehensible, religious discrimination does not ordinarily amount to persecution).[5] Absent a finding of past persecution, there is no presumption of future persecution,

and the applicant must show a well-founded fear of future prosecution. *See* 8 C.F.R. § 1208.13(b); *Karki v. Holder*, 715 F.3d 792, 801 (10th Cir.2013).

No reasonable adjudicator would be compelled to disagree with the BIA's assessment here: Sun failed to show a well-founded fear of future persecution. "For a fear of future persecution to be well-founded, it must be both subjectively genuine and objectively reasonable." *Ritonga*, 633 F.3d at 976 (internal quotation marks omitted). A fear of future persecution may be "objectively well-founded if . . . the petitioner may be singled out for persecution upon returning to her country of origin." *Id.* (internal quotation marks omitted). A petitioner must only show a "reasonable possibility" he will be persecuted in the future. *Id.* (internal quotation marks omitted).

Sun fails to explain how the BIA erred in relying on the country and religious-freedom reports; we consider that reliance well-founded. Other than Sun's uncorroborated claim about his father's 2011 arrest, the BIA found no evidence of his father and uncle facing any other harm for attending unregistered house churches in China. Sun does not take issue with that conclusion. More important, our review of the corroboration requirement is circumscribed by statute: "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). No reasonable trier of fact would be compelled to conclude the letter

---

5. In his reply brief, Sun claims the BIA failed to address his argument about portions of the hearing transcript marked "indiscernible." But the BIA did address this in a footnote to its decision, concluding the transcript was

"sufficient for . . . review" and noting Sun had not alleged prejudice or identified any material facts that were omitted from the transcript. R. at 2, n. 2. Hence, Sun's argument is unfounded.

the IJ sought from Sun's father regarding the father's 2011 arrest was unavailable given Sun's frequent phone contact with his father and his ability to obtain a copy of the special-penalty receipt during the period of time he was given to obtain corroborating evidence.[6]

Sun's only argument touching on future persecution is that his father's 2007 letter and his uncle's affidavit support his fear of future persecution. But the IJ found Sun's testimony regarding continued police interest in him was vague, lacked detail, and lacked sufficient corroboration, and the only pieces of corroborating evidence were his father's letter and his uncle's affidavit, which are equally vague and lacking in detail. Moreover, as noted above, the IJ questioned the authenticity of these letters because Sun did not have the envelopes showing they were mailed from China and because of Sun's shifting testimony that his father's letter had been mailed in the one envelope he did produce.[7] On the whole, Sun has not shown a reasonable adjudicator would be compelled to reach a different conclusion on this aspect of his asylum claim.

Because Sun has not established a well-founded fear of persecution under the asylum standards, he necessarily fails to meet the more demanding requirements for re-

striction on removal and relief under the CAT. *See Uanreroro*, 443 F.3d at 1202.

The petition for review is denied.

---

6. Sun asks us for another chance to obtain additional corroborating evidence from his father, claiming he has new evidence and referring to the fact his father now lives in England. But we lack jurisdiction to consider his argument, as he never made this request before the BIA. *See* 8 U.S.C. § 1252(d)(1) (conditioning judicial review of final removal order on exhaustion of administrative remedies); *Sidabutar*, 503 F.3d at 1118 ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."). He also argues he received poor advice from his prior attorneys

regarding adequate corroboration. But he did not raise an ineffective-assistance claim before the BIA, so we lack jurisdiction to consider it.

7. In addition to relying on the country and religious-freedom reports, the BIA also agreed with the IJ that Sun's fear of future persecution was poorly corroborated and, for that additional reason, was not objectively reasonable. We have therefore consulted the IJ's more complete explanation on that topic. *See Uanreroro*, 443 F.3d at 1204.