**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DARSHAN SINGH,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

Nos. 10-9535 & 11-9534
(Petitions for Review)

---

ORDER AND JUDGMENT[*]

---

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**BALDOCK**, Circuit Judge.

---

Darshan Singh, a native and citizen of India, petitions for review of decisions

of the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ)

denial of his application for asylum, restriction on removal, and protection under the

Convention Against Torture (CAT) (No. 10-9535); and denying in part his motion for

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
these petitions for review. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The
cases are therefore ordered submitted without oral argument.  This order and
judgment is not binding precedent, except under the doctrines of law of the case, res
judicata, and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

reconsideration (No. 11-9534). We have consolidated his petitions for review for purposes of disposition. Exercising our jurisdiction under 8 U.S.C. § 1252, we deny in part, and dismiss in part for lack of appellate jurisdiction.

## BACKGROUND

On April 4, 2007, the Department of Homeland Security issued a Notice to Appear to Mr. Singh, charging him with having entered the United States without inspection "at or near BLAINE, [Washington] on or about August 22, 2002." Admin. R., No. 10-9535, at 854. Mr. Singh conceded the allegations in the Notice to Appear. As he later explained, he used a passport under the name of Sukhdev Singh with his own picture inserted to travel from India to Vancouver, Canada. From there, he entered the United States by car.

On January 17, 2003, Mr. Singh filed an application for asylum, restriction on removal, and relief under the Convention Against Torture (CAT).[1] In this application, he charged that he had been persecuted in India because of his Sikh religion and his work on behalf of an independent Sikh homeland in India.

In July 2008, the IJ held a removal hearing at which Mr. Singh testified. During the hearing, Mr. Singh stated that he was raised in the Sikh religion and grew

---

[1]     "Restriction on removal was referred to as 'withholding of removal' before amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). . . . [F]or the sake of accuracy, and because this claim was filed after IIRIRA's effective date, we will use the term 'restriction on removal' throughout this opinion." *Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

up in Batala, India, where he owned an auto parts shop. At the time of the hearing, his wife and one of his two children still lived in India.

His troubles with the Indian authorities began in August 1997, when a friend of his brother-in-law came to stay at the Singh home in Batala. After the friend left, the police arrived and accused Mr. Singh of being a terrorist and a supporter of terrorism. They searched the house but found nothing. They then arrested Mr. Singh and took him to a police station. There, they held him for a day and beat him with a wooden stick and a leather belt, rolled a wooden stick over his legs, and threatened to kill him. The police released him after his wife paid a bribe.

After his release, Mr. Singh's wife and brother-in-law took him to Ravi Hospital in Batala, where Dr. Ravinder Pal Singh treated him for ten days for severe internal injuries. As part of his asylum application, Mr. Singh submitted a signed statement from Dr. Singh on Ravi Hospital stationery. In the statement, Dr. Singh stated that he treated Mr. Singh from August 19 to August 28, 1997, and noted that "[h]e remained unconscious due to internal injuries." *Id.* at 543.

Mr. Singh returned home and resumed his duties at the auto parts store. But after a few days, the police began paying visits to his shop. During these visits, they used abusive language toward him and threatened him. Mr. Singh decided to relocate, so in November 1998, he and his family left Batala for Amritsar.

After relocating to Amritsar, in May 1999 Mr. Singh joined a group called the Khalra Action Committee (KAC). The goal of the KAC was to collect affidavits to

- 3 -

show that innocent people had been tortured or killed by the police. Soon Mr. Singh began collecting affidavits for the KAC. He also contributed financially to its work.

In his asylum application, Mr. Singh also stated that in January 2001 he was arrested in Amritsar after affidavits were found at his house, and he was taken to the police station, where he was held for forty-eight hours and beaten. His wife again secured his release by paying a bribe.

In December 2001 Mr. Singh gave a speech at a human rights celebration organized by the KAC. In the speech, he advocated the creation of a separate state for Sikhs in India, known as "Khalistan." The next day, the police again came to his house, but Mr. Singh was out of town. Not finding him at home, they arrested his wife. They released his wife after prominent Sikhs promised (without actually intending to do so) to ensure Mr. Singh's appearance at the police station upon his return. Mr. Singh did not return home; instead, he fled, first to New Delhi, then to Canada and the United States. He testified that if he returned to India, the police would kill him.

The IJ found that Mr. Singh's asylum application should be denied because he failed to establish by clear and convincing evidence that he had filed his application within one year of his arrival in the United States. He noted that Mr. Singh "provided no documentation to show his date of entry into the United States" and that because his testimony was not credible, it alone was "not . . . sufficient to qualify as clear and convincing evidence." *Id.* at 308.

Turning to the application for restriction on removal and CAT relief, the IJ found Mr. Singh's testimony in support of these forms of relief not credible, for two reasons. First, in his initial written statement in support of his asylum application, he did not mention being tortured or hospitalized after his 1997 arrest. The IJ viewed this as evidence that "the testimony and the later statement regarding that incident have been inflated." *Id.* at 309.

Second, the supporting documents from KAC and Ravi Hospital that Mr. Singh provided and vouched for at the hearing appeared to be counterfeit. The IJ noted rebuttal testimony from Mr. Rouco, a Supervisory Special Agent from the Department of Homeland Security, who called the telephone numbers on the letterheads of the documents provided, but could not reach the purported authors of either of the documents at those phone numbers. There was also evidence that Ravi Hospital did "not exist in the location purported to be set forth" on its own stationery used for the purported letter from Dr. Singh. *Id.* at 310. Moreover, the purported letter from the KAC contained a misspelling of the word "committee" in its letterhead.

Finally, the IJ determined that even if Mr. Singh's testimony were deemed credible, he had failed to show that he could not escape persecution by relocating to a different part of India. He also failed to show that it was more likely than not that he would be tortured by the Indian government or that he could not safely relocate within that country to avoid torture.

Mr. Singh appealed to the BIA, which affirmed the IJ's decision in an opinion authored by a single judge. The BIA noted the IJ's conclusion that Mr. Singh failed to prove that he filed his asylum application within a year of his arrival, and stated incorrectly that he "has not appealed from this finding." *Id.* at 223. It also found the IJ's adverse credibility finding, based on the fraudulent documents, well-supported and affirmed the denial of his restriction and CAT claims. On reconsideration, the BIA struck the statement in its previous decision that Mr. Singh had failed to appeal the one-year finding. It nevertheless upheld the IJ's finding that he failed to show by clear and convincing evidence that his application was timely filed, and affirmed its earlier decision in all other respects.

## ANALYSIS

Mr. Singh raises three issues for our review. First, he contends that the BIA erred in finding that he failed to establish that he met the one-year filing deadline for his asylum application. Second, he argues that the BIA violated his right to due process when it upheld the IJ's adverse credibility finding. Finally, he complains that the BIA committed reversible error by failing to assign its decision to a three-member panel.

### 1. Asylum Claim

An alien who seeks asylum must demonstrate by clear and convincing evidence that his application was filed within one year after his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). The Immigration and Nationality Act further

provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" related to the timeliness of an asylum application. *Id.* § 1158(a)(3).

The Act makes an exception to this jurisdictional bar for constitutional questions and questions of law. *See* 8 U.S.C. § 1252(a)(2)(D). Petitioners relying on the exception for constitutional questions must allege at least "a *substantial constitutional issue*" in order for this court to retain jurisdiction. *Morales Ventura v. Ashcroft,* 348 F.3d 1259, 1262 (10th Cir. 2003).

Mr. Singh first contends that, notwithstanding the IJ and BIA's conclusion to the contrary, he met his burden of demonstrating the timeliness of his application by clear and convincing evidence. This argument does not present a substantial constitutional issue. "Recasting challenges to factual . . . determinations as due process or other constitutional claims . . . is clearly insufficient to give this Court jurisdiction under § 1252(a)(2)(D)." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks and citations omitted).

Mr. Singh also contends that the BIA's selective and improper use of evidence "deprived [him] of the right to fair hearing" on the timeliness issue. Pet. Br. at 14. He details two instances in which he contends the BIA deprived him of due process. First, he argues that the BIA improperly ignored the affidavit of Gurinder S. Randev submitted in connection with his asylum application. Mr. Randev's affidavit stated

that "[o]n reaching California on Aug 22, 2002, [Mr. Singh] lived with me."  Admin. R., No. 10-9535, at 542.

"[T]he BIA is not required to discuss every piece of evidence when it renders a decision."  *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995).  We discern no substantial constitutional issue resulting from the BIA's failure to specifically mention the Randev affidavit, which only provided information about when Mr. Singh "reach[ed] California," not when he entered the United States.

Second, Mr. Singh argues that the BIA relied on "flawed and impermissible testimony by the government witness, Anthony Rouco," Pet. Br. at 14, an issue we consider further, *infra*.  Agent Rouco did not offer any testimony concerning whether Mr. Singh met the one-year deadline.  He only offered testimony that tended to undermine Mr. Singh's credibility on other issues.  In any event, as will be seen, the use of Agent Rouco's testimony did not violate Mr. Singh's due process rights. Hence, its effect on his credibility concerning the timeliness question does not present a substantial constitutional issue.

Mr. Singh has failed to present a substantial constitutional issue concerning the timeliness of his asylum application.  We therefore lack jurisdiction to review the BIA's decision that he failed to prove his application was timely filed.

### 2.  Adverse Credibility Determination

"We review the [agency's] factual findings for substantial evidence." *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009).  Under this standard,

- 8 -

"factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted). We review de novo questions of law and constitutional challenges. *See Ferry v. Gonzales*, 457 F.3d 1117, 1126 (10th Cir. 2006). "We do not question credibility findings that are substantially reasonable." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 (10th Cir. 2008) (internal quotation marks omitted). But in light of the potentially dispositive nature of such findings, "specific, cogent reasons" must be given for disbelieving the alien. *Id.*

During the IJ hearing, the government called a rebuttal witness, Anthony Rouco, who appeared telephonically. Agent Rouco testified that the day before, at the government's attorney's request, he had telephoned the numbers the government's attorney gave him for the KAC and Ravi Hospital. The number for the KAC had been disconnected, and the number for the Ravi Hospital resulted in him reaching "a cell phone number that belongs to a guy in India named Aman" who "[d]id [not] know anything" about Dr. Singh or Ravi Hospital. Admin. R., No. 10-9535, at 464. The IJ and BIA relied on this testimony in determining that Mr. Singh was not credible.

Mr. Singh's counsel objected to Agent Rouco's testimony because Agent Rouco was not on the witness list provided to him by the government. The government's counsel responded that it was not required to disclose this witness

because "it's impeachment." *Id.* at 437. Mr. Singh now argues that the use of Agent Rouco's testimony without prior notice to him violated his right to due process.

"Because aliens do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula–Medina*, 572 F.3d at 828 (internal quotation marks omitted). Mr. Singh received the process due him here. He was permitted to cross-examine Agent Rouco. Moreover, as the BIA noted, he was "not precluded from filing a motion to remand or a timely motion to reopen, insofar as he wished to further address and rebut the testimony and evidence provided." Admin. R., No. 11-9534, at 8.

In further support of his due process argument, Mr. Singh cites a section of the Immigration Court Practice Manual, which reads as follows:

> For individual calendar hearings involving non-detained aliens, filings must be submitted at least fifteen (15) days in advance of the hearing. *This provision does not apply to exhibits or witnesses offered solely to rebut and/or impeach.*

Immigration Ct. Practice Man. Rule 3.1(b)(ii)(A) (emphasis added).

The BIA concluded that the exception in this rule applied because Agent Rouco's testimony was presented for impeachment purposes. This conclusion is supported by substantial evidence. Even Mr. Singh admits that Mr. Rouco was "brought in for impeachment." Pet. Br. at 17. The Rule provides no basis for reversal here.

Finally, Mr. Singh argues that he was entitled to advance notice of Agent Rouco's testimony because Agent Rouco was offered as an expert witness rather than solely a rebuttal or impeachment witness. Although the government's counsel asked Agent Rouco two general questions about his training as an investigator for the Department of Homeland Security, *see* Admin. R., No. 10-9535 at 442, he made no effort to qualify him as an expert witness and he did not ask him to express any expert opinion. The BIA's conclusion that Agent Rouco's testimony was offered solely for impeachment and not as expert testimony is supported by substantial evidence.[2]

### 3. Review by Single-Judge Panel

Mr. Singh argues that his case should have been reviewed by a three-judge panel of the BIA. He argues that three-judge review was appropriate because the IJ's decision either was "not in conformity with the law or with applicable precedents," 8 C.F.R. § 1003.1(e)(6)(iii), or because it was "clearly erroneous factual[ly]," *id.*

---

[2] Mr. Singh complains repeatedly, albeit in a cursory fashion, of "documentary" evidence as well as "testimonial" evidence admitted against him without notice. *See, e.g.*, Pet. Br. at 10 ("The government also submitted eleventh hour documentary evidence refuting the medical corroborative evidence of Mr. Singh's medical treatment as a result of his injuries."). It is not until page twenty-six of his brief, however, in his discussion of his "single-judge panel" issue, that he identifies any specific piece of documentary evidence allegedly used improperly against him (a website report from the www.SearchIndia.com website). Moreover, his argument on page twenty-six involves the evidentiary foundation for the use of the website result, and does not specifically target the lack of notice. To the extent it even qualifies for appellate consideration, his due process argument about documentary evidence fails for essentially the same reasons as his argument concerning Agent Rouco's testimony.

§ 1003.1(e)(6)(v).  He has failed to demonstrate that either of these circumstances apply in this case, however, and so we reject this argument.

We DISMISS the petitions for review to the extent they challenge the BIA's findings concerning the timeliness of Mr. Singh's asylum application.  The petitions for review are otherwise DENIED.

Entered for the Court


John C. Porfilio
Senior Circuit Judge